ELIDA, INC. *v.* HARMOR REALTY CORPORATION ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued December 13, 1978—decision released April 3, 1979

*Robert S. Reger,* for the appellant (plaintiff).

*Stephen B. Alderman,* with whom were *Raymond Parlatto,* and, on the brief, *Robert A. Ginsburg* and *Dana E. Friedman,* for the appellees (defendants The Gourmet Shoppe, Inc., et al.).

*John R. Lacey,* assistant attorney general, with whom, on the brief, were *Carl R. Ajello,* attorney general and *Gerard J. Dowling,* assistant attorney general, for the appellee (defendant state of Connecticut).

COTTER, C. J. In this appeal by the plaintiff, we are required to determine the applicability of the Connecticut Anti-Trust Act[1] to a restrictive covenant contained in a commercial lease between the plaintiff and the named defendant.

The defendant Harmor Realty Corporation is the owner, landlord and lessor of premises in the Amity Shopping Center, a shopping complex located in New Haven and comprised of approximately twenty-five tenants. The plaintiff, a family-owned corporation doing business as Westville Home Bakery, entered into an agreement on October 28, 1970, with the defendant Harmor Realty Corporation wherein the plaintiff leased 2000 square feet of space located in the shopping center for the purpose of engaging in the production and retail sale of freshly baked goods. The lease continued from October 15, 1970, until November 14, 1976; and a contemporaneously-executed addendum to the lease gave the plaintiff the option to extend the term of the lease for an additional four-year period to November 14, 1980, which the plaintiff duly exercised. The lease addendum further provided that the plaintiff would have, subject to certain exceptions, "the exclusive right to sell products normally sold by a bakery shop," and that the defendant lessor would not "rent any other space in the shopping center for the purpose of baking on the premises."[2]

---

[1] General Statutes §§ 35-24 to 35-44.

[2] "Article XIX, Section 1. It is agreed that the Tenant will have the exclusive right to sell products normally sold by a bakery shop, but this exclusive right will not apply to nor prevent the sale of such products by chain tenants such as the super food markets, the Jr. Department store or the Variety store and the Drug store. The Landlord agrees not to rent any other space in the shopping center for the purpose of baking on the premises, with the exception of the Chains, however, the Landlord agrees not to rent any space to a bakery chain."

On or about December 28, 1976, the Harmor Realty Corporation leased other space in its shopping complex to the defendant The Gourmet Shoppe, Inc., a business engaged in the sale of products normally sold by a bakery shop. Although Harmor Realty Corporation knew, or should have known, that The Gourmet Shoppe, Inc., would engage in the sale of bakery products,[3] it failed to take any action to prohibit the sale of such products despite the plaintiff's repeated demands. Both defendant corporations, and their respective presidents, had actual and constructive notice of the restrictive covenant contained in the plaintiff's lease.

The plaintiff brought the present action in the Superior Court seeking (1) a temporary and permanent injunction enjoining the defendant The Gourmet Shoppe, Inc., from engaging in the retail sale of bakery products for off-premises consumption; (2) a temporary and permanent injunction enjoining the defendant Harmor Realty Corporation from failing to perform its contractual obligations to the plaintiff "and/or from failing to otherwise act so as to cause the defendant The Gourmet Shoppe, Inc. . . . to cease and desist from the retail sale, for off-premises consumption," of bakery products; and (3) money damages and attorney's fees and costs. Following the entry of the trial court's order granting the temporary injunctions requested by the plaintiff pending a final hearing, the defendants filed special defenses alleging that the lease provision upon which the plaintiff based its claim for relief constituted an unlawful

[3] The Gourmet Shoppe, Inc. is a corporation engaged in the general business of a restauranteur and retail sales of delicatessens, including baked goods, such as those which the plaintiff produces and sells at the Amity Shopping Center.

restraint of trade in violation of the state anti-trust act and was, therefore, unenforceable. Pursuant to General Statutes § 35-32 (b), the state of Connecticut was permitted to intervene as a party to this action with the status of defendant-intervenor. In a bifurcated trial for the purpose of which the defendants admitted the essential allegations of the first count of the plaintiff's amended complaint alleging irreparable injury as a result of a breach of the restrictive covenant in its lease, it was agreed that the sole issue to be decided by the court was whether the state antitrust act should be construed so as to prohibit the enforcement of the restrictive covenant and thus prohibit the issuance of the permanent injunctions sought by the plaintiff.

The trial court concluded that the restrictive covenant sought to be enforced by the plaintiff was intended to prevent competition with the plaintiff and will have that effect if enforced; and that the covenant in question was "per se" unreasonable and contrary to the express language of General Statutes § 35-28 (d). Judgment was rendered in favor of all defendants on the first count of the plaintiff's amended complaint and the requests for permanent injunctions were denied.[4] The plaintiff appealed to this court from the judgment rendered.

I

At the outset, we consider the threshold question raised by the plaintiff whether the state antitrust act should be construed so as to apply to a claimed vested right it has in a restrictive covenant in a contract originally entered into prior to the effec-

[4] The previously issued temporary injunctions were dissolved by the court.

tive date of the act. The plaintiff claims that such an interpretation would be contrary to well-settled principles regarding the retrospective application of statutes; violative of the plaintiff's right of redress for injuries guaranteed by article first, § 10 of the state constitution; in conflict with the contract clause of the federal constitution; and would amount to a denial of due process. In view of the accepted interpretation of the applicability of such legislation, we are not persuaded by the plaintiff's arguments in this regard.

General Statutes § 35-26 provides that any contract in restraint of trade or commerce is unlawful. The fact that a contract may have been executed before the statute took effect is immaterial if it is in existence thereafter. The prohibition is not directed at the formation and existence of the contract prior to the effective date of the act, but in the persistence of the parties in it after it has become unlawful. "The statute prohibits the continuing or entering into such an agreement for the future, and if the agreement be continued it then becomes a violation of the act. There is nothing of an *ex post facto* character about the act." *United States* v. *Trans-Missouri Freight Assn.,* 166 U.S. 290, 342, 17 S. Ct. 540, 41 L. Ed. 1007; see *State* v. *Missouri, Kansas & Texas Ry. Co. of Texas,* 99 Tex. 516, 527, 91 S.W. 214; 54 Am. Jur. 2d, Monopolies § 454.

"[I]t is settled that neither the 'contract' clause nor the 'due process' clause has the effect of overriding the power of the state to establish all regulations that are reasonably necessary to secure the health, safety, good order, comfort, or general welfare of the community . . . and that all contract and property rights are held subject to its

fair exercise." *Atlantic Coast Line R. Co.* v. *Goldsboro,* 232 U.S. 548, 558, 34 S. Ct. 364, 58 L. Ed. 721; *Ansonia* v. *Ansonia Water Co.,* 101 Conn. 151, 157, 125 A. 474. " '[C]ontracts must be understood as made in reference to the possible exercise of the rightful authority of the government, and no obligation of a contract can extend to the defeat of legitimate government authority.' [*Knox* v. *Lee,* 79 U.S. (12 Wall.) 457, 551]." *Louisville & Nashville R. Co.* v. *Mottley,* 219 U.S. 467, 482, 31 S. Ct. 265, 55 L. Ed. 297. Consequently, the state, pursuant to its lawful exercise of the police power, may rightfully prohibit the continuance in the future of those things already in existence which are deemed injurious to the rights and interests of its citizens so as to justify such an exercise of the power whether the continuance of the things is provided for by contract or not. See *Ansonia* v. *Ansonia Water Co.,* supra, 156–58. The right of private contract, therefore, "must yield to the exigencies of the public welfare when determined in an appropriate manner by the authority of the State." *Union Dry Goods Co.* v. *Georgia Public Service Corporation,* 248 U.S. 372, 377, 39 S. Ct. 117, 63 L. Ed. 309.

Our conclusion that the legislation in question may constitutionally apply to the contract entered into prior to the act's passage, which included the option to extend for an additional term, is in accord with the decisions of the United States Supreme Court regarding the applicability of federal antitrust provisions. See *United States* v. *Southern Pacific Co.,* 259 U.S. 214, 234–35, 42 S. Ct. 496, 66 L. Ed. 907; *Addyston Pipe & Steel Co.* v. *United States,* 175 U.S. 211, 234, 20 S. Ct. 96, 44 L. Ed. 136; *United States* v. *Trans-Missouri Freight Assn.,* supra. In view of the position we take on this issue,

we need not consider whether the renewal of the plaintiff's lease for an additional four-year term after the Connecticut Anti-Trust Act was enacted might be considered the creation of a new lease as of the date of the renewal.

## II

The plaintiff's principal claim of error in this appeal is directed at the trial court's determination that the restrictive covenant contained in the plaintiff's lease was "per se" unreasonable and contrary to the express langauge of § 35-28 (d) of the General Statutes.[5] The plaintiff argues that the so-called "Rule of Reason" which is utilized, in certain cases, by federal courts construing the Sherman Antitrust Act (26 Stat. 209, as amended, 15 U.S.C. §§ 1-7) was the appropriate standard for the trial court to apply in the present case. See, generally, Bork, "The Rule of Reason and the Per Se Concept," part 1, 74 Yale L.J. 775 (1965); Bork, "The Rule of Reason and the Per Se Concept," part 2, 75 Yale L.J. 373 (1966).

Under the common law, the well-settled rule is that an anticompetitive covenant ancillary to a lawful contract is enforceable if the restraint upon trade is reasonable. *Scott* v. *General Iron & Welding Co.,* 171 Conn. 132, 137, 368 A.2d 111; *Domurat* v. *Mazzaccoli,* 138 Conn. 327, 330, 84 A.2d 271; *Mattis* v. *Lally,* 138 Conn. 51, 54, 82 A.2d 155; *Dick* v. *Sears-Roebuck & Co.,* 115 Conn. 122, 126, 160 A. 432; *Samuel Stores, Inc.* v. *Abrams,* 94 Conn. 248,

---

[5] "[General Statutes] Sec. 35-28. ACTS UNLAWFUL WHEN PURPOSE OR EFFECT IS RESTRAINT OF TRADE OR COMMERCE. Without limiting section 35-26, every contract, combination, or conspiracy is unlawful when the same are for the purpose, or have the effect, of: . . . (d) refusing to deal, or coercing, persuading, or inducing third parties to refuse to deal with another person."

252, 108 A. 541; 54 Am. Jur. 2d, Monopolies § 511; see note, "Restrictive Covenants in Shopping Center Leases," 34 N.Y.U. L. Rev. 940 (1959). To satisfy this requirement of reasonableness, we have stated that "the restraint must be limited in its operation with respect to time and place and afford no more than a fair and just protection to the interests of the party in whose favor it is to operate, without unduly interfering with the public interest. [Citations omitted.]" *Mattis* v. *Lally,* supra, 54. A prohibition against the conduct of a rival business contained in a deed, for example, has been held not to violate public policy where the restriction upon the conduct of a certain business is limited to the particular piece of land transferred, for a reasonable purpose and for a reasonable period of time. *Dick* v. *Sears-Roebuck & Co.,* supra.

Mindful of the foregoing principles and authorities, we review the trial court's conclusion that the express language of General Statutes § 35-28 (d) renders the restrictive covenant in question per se unreasonable without resort to an examination of the "reasonableness" of that covenant under all the circumstances.

There is no dispute between the parties that the Connecticut Anti-Trust Act incorporates, in modified form, and with notable exceptions, various provisions of the federal antitrust laws, especially the Sherman Act, 26 Stat. 209, 15 U.S.C. §§ 1 et seq. See *Mazzola* v. *Southern New England Telephone Co.,* 169 Conn. 344, 347-48, 363 A.2d 170; Brodigan, "The Connecticut Antitrust Act," 47 Conn. B.J. 12, 16 (1973). In such a situation, the judicial interpretation of the federal act is particularly pertinent in our construction of the state statute. *United*

*Aircraft Corporation* v. *International Assn. of Machinists,* 161 Conn. 79, 85, 285 A.2d 330, cert. denied, 404 U.S. 1016, 92 S. Ct. 675, 30 L. Ed. 2d 663; *Windsor* v. *Windsor Police Department Employees Assn., Inc.,* 154 Conn. 530, 536, 227 A.2d 65. Section 35-28 (d) has no specific counterpart in the federal antitrust laws, but rather, it is considered to be a codification of what have come to be known as "per se" violations of the Sherman Act, notably § 1. Brodigan, supra, 24.

In *Northern Pacific Ry. Co.* v. *United States,* 356 U.S. 1, 78 S. Ct. 514, 2 L. Ed. 2d 545, the court, while recognizing that there were some agreements whose validity depended on the surrounding circumstances, observed (p. 5): "[T]here are certain agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use." Since the area of per se violations is carefully limited;[6] *Walker Process Equipment, Inc.* v. *Food Machinery & Chemical Corporation,* 382 U.S. 172, 178, 86 S. Ct.

---

[6] An example of the reluctance to apply the "per se" rule in an overly broad fashion might best be found in the recent United States Supreme Court decision in *Continental T.V., Inc.* v. *GTE Sylvania, Inc.,* 433 U.S. 36, 97 S. Ct. 2549, 53 L. Ed. 2d 568, wherein the court overruled *United States* v. *Arnold Schwinn & Co.,* 388 U.S. 365, 87 S. Ct. 1856, 18 L. Ed. 2d 1249, which held that a per se violation results when a manufacturer sells products to his distributor subject to territorial restrictions on resale. Although the court left unanswered the possibility that some vertical restrictions might justify per se prohibition, it concluded that a return to the "rule of reason" which governed vertical restrictions prior to *Schwinn* was warranted. *Continental T.V., Inc.* v. *GTE Sylvania, Inc.,* supra, 58–59. The court noted that "departure from the rule-of-reason standard must be based upon demonstrable economic effect rather than — as in *Schwinn* — upon formalistic line drawing." Id.

347, 15 L. Ed. 2d 247; it can be stated generally that the following are recognized as "per se" violations of the federal act: (1) price fixing; *United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 60 S. Ct. 811, 84 L. Ed. 1129, reh. denied, 310 U.S. 658, 60 S. Ct. 1091, 84 L. Ed. 1421; (2) agreements among competitors to divide markets or allocate customers; *Continental Ore Co. v. Union Carbide & Carbon Corporation,* 370 U.S. 690, 82 S. Ct. 1404, 8 L. Ed. 2d 777; *Timkin Roller Bearing Co. v. United States,* 341 U.S. 593, 71 S. Ct. 971, 95 L. Ed. 1199; (3) certain tying arrangements; *Fortner Enterprises, Inc. v. United States Steel Corporation,* 394 U.S. 495, 89 S. Ct. 1252, 22 L. Ed. 2d 495; and (4) group boycotts. *Klor's, Inc. v. Broadway-Hale Stores, Inc.,* 359 U.S. 207, 79 S. Ct. 705, 3 L. Ed. 2d 741.

In the present case, the defendants argue that the prohibition of § 35-28 (d) of our state act may be construed with reference to federal cases dealing with group boycotts or concerted refusals to deal which have been held to be per se illegal. See *United States v. General Motors Corporation,* 384 U.S. 127, 86 S. Ct. 1321, 16 L. Ed. 2d 415; *Klor's, Inc. v. Broadway-Hale Stores, Inc.,* supra. The restrictive covenant in the present case, however, is clearly distinguishable from "collective boycott" cases which involve horizontal restraints. *Klor's, Inc. v. Broadway-Hale Stores, Inc.,* supra (agreement between suppliers); *Fashion Originators' Guild of America, Inc. v. Federal Trade Commission,* 312 U.S. 457, 668, 61 S. Ct. 703, 85 L. Ed. 949 (agreement between merchants); see note, "The Antitrust Implications of Restrictive Covenants in Shopping Center Leases," 86 Harv. L. Rev. 1201, 1212–18 (1973); Eagle, "Shopping Center Control: The Developer Besieged," 51 Jour. Urb. Law, 586,

605–608 (1974). Moreover, it is interesting to note that vertical territorial restrictions are now subject to a "reasonableness" test under federal law. See *Continental T.V., Inc.* v. *GTE Sylvania, Inc.,* 433 U.S. 36, 97 S. Ct. 2549, 53 L. Ed. 2d 568.

The defendants nonetheless argue that the covenant contained in the plaintiff's lease is a "naked restraint of trade" which should be declared per se illegal under the provisions of our state antitrust act. While there is a general paucity of reported decisions specifically addressed to the type of restrictive covenant involved in the present case, our review of the relevant authorities leads us to reject the application of the "per se" rule urged by the defendants under the facts of this case.

In a recent case construing a state antitrust act which, not unlike our act, is similar to the federal act, the Kentucky Court of Appeals concluded that a restrictive covenant in a shopping center lease with a medium-size store which granted that store the exclusive right to sell men's and boys' clothing[7] was not unreasonable per se. *Mendell* v. *Golden-Farley of Hopkinsville, Inc.,* 1978-1 Trade Cases ¶ 61,814, p. 73,390 (Ky. Ct. App.). Applying the appropriate antitrust analysis set forth by the United States Supreme Court with regard to federal provisions, the Kentucky court concluded that its state's antitrust provisions did not effect a material change in the common law of Kentucky respecting the validity of restrictive covenants in leases. Id.,

---

[7] Like the provision in the instant case, the clause in the *Mendell* lease did not apply to the major chains. (See footnote 2 of this opinion). That clause also made exception for other tenants whose sale of such clothing is incidental to their main line of business. *Mendell* v. *Golden-Farley of Hopkinsville, Inc.,* 1978-1 Trade Cases ¶ 61,814, p. 73,390 (Ky. Ct. App.).

230

p. 73,392.  Similarly, a shopping center lease provision restraining a tenant from operating a similar sporting goods store within three miles of the center was held to be prima facie reasonable under Florida antitrust law. *Pensacola Associates* v. *Biggs Sporting Goods Co.,* 353 So. 2d 944 (Fla. Dist. Ct. App.).

In *Borman's Inc.* v. *Great Scott Super Markets, Inc.,* 433 F. Sup. 343 (D. E.D. Mich.), the court rejected (p. 349) the claim that a shopping center lease provision which granted a tenant a "partial exclusive" at the center constituted a per se violation of the antitrust laws.  The court noted: "[S]uch a rule would disregard important distinctions between and among the types of shopping centers involved, the type of store involved and the type of restraint involved.  Since very real distinctions should be made depending on the facts, any per se rule of illegality, or legality, should not be formulated." Id., 349.  Likewise, another federal court has recently indicated that the federal antitrust implications of a restrictive lease provision granting exclusive rights to a shopping center tenant would be determined by examining all the surrounding circumstances to see if the particular lease provisions unreasonably restrain trade. *Dart Drug Corporation* v. *Peoples Drug Stores, Inc.,* 1977-1 Trade Cases ¶ 61,281, pp. 70,887–88 (D. D.C.); see *Pay Less Drug Stores Northwest, Inc.* v. *City Products Corporation,* 1975-2 Trade Cases ¶ 60,385, p. 66,676 (D. Ore.).

We find the above ratiocination persuasive in the circumstances of the present case.  As under the Sherman Act, the "rule of reason" was intended to be the prevailing standard to be applied for the purpose of determining whether a particular act had

or had not brought about the wrong against which the statute provided in a given case. *Standard Oil Co. of New Jersey* v. *United States,* 221 U.S. 1, 59–61, 31 S. Ct. 502, 55 L. Ed. 619. "Per se" rules of illegality should be applied only to conduct which is shown to be "manifestly anticompetitive." *Continental T.V., Inc.* v. *GTE Sylvania, Inc.,* supra, 49–50. Consequently, the actual impact of particular arrangements on competition must be examined to determine whether they have a "pernicious effect on competition and lack . . . any redeeming virtue." *Northern Pacific Ry. Co.* v. *United States,* supra, 5. The restrictive covenant in the present case cannot be so characterized.[8]

Hence, we conclude that the trial court was in error in determining that the plaintiff's lease provision was "per se" illegal. The "rule of reason," by which the factfinder "weighs all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition"; *Continental T.V., Inc.* v. *GTE Sylvania, Inc.,* supra, 49; was the appropriate standard for the trial court to apply. Since additional evidence may be necessary for a determination of the reasonableness of the covenant in the present case, a new trial must be ordered. We note, in this regard, that the facts which may be relevant upon remand include, but are not limited to, the following: The plaintiff's store was physically small in size, 20 feet by 100 feet, and located in

---

[8] "It is well known that the success of a shopping center depends upon the gathering together in one area of a variety of enterprises which are able to serve the needs of the general public and that this end can often best be accomplished by offering to the individual merchants the exclusive right to sell in the center the kind of merchandise he handles." *Savon Gas Stations Number Six, Inc.* v. *Shell Oil Co.,* 309 F.2d 306 (4th Cir.).

a shopping complex consisting of approximately twenty-five tenants; its "exclusive right" to sell bakery products in the shopping center specifically did "not apply to nor prevent the sale of such products by chain tenants such as the super food markets, the Jr. Department store or the Variety store and the Drug store" (see footnote 2 of this opinion); and the plaintiff was not a major or anchor tenant, but a small business which was compelled to compete with the so-called chain stores or larger anchor tenants.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.