[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE
CT Page 2290
The defendants, The Stop Shop Supermarket Companies, Inc. ("Stop Shop"), DeForest Industries, Inc. ("DeForest"), Anthony Picardi and Jerry C. Picardi, Trustee ("Picardi"), have moved to strike the plaintiff's Revised Amended Complaint dated June 13, 1995 on the grounds that it does not allege "antitrust standing," which is a requirement of a cognizable claim for a violation of the Connecticut Antitrust Act, Connecticut General Statutes §§35-24 to 35-46 (1995).
The Complaint alleges that the plaintiff has an option on a land parcel adjacent to land owned by defendant Picardi, which it planned to develop for a shopping center with a supermarket. Stop Shop operates a supermarket in a shopping center directly across from plaintiff s proposed site. The plaintiff planned the supermarket shopping center for a substantial period of time. The plaintiff negotiated the rights to access over the Picardi property in order to facilitate the planned development. Before the agreement was reduced to writing, but after it had been fully negotiated, Picardi was approached by DeForest, acting as an agent for Stop Shop. Thereafter Stop Shop and Picardi executed an agreement which made the Picardi property unavailable as a route for plaintiff to pursue the construction of a supermarket on its optioned property. The purpose and effect of that agreement was to prevent competition in supermarket shopping center sales by eliminating the possibility of competitive growth in shopping center supermarkets in the vicinity of the Stop 
Shop supermarket.
The function of a motion to strike is to test the legal sufficiency of a pleading. Practice Book 152; Ferryman v. Groton,212 Conn. 138, 142, 561 A.2d 432 (1989); Mingachos v. CBS, Inc.,196 Conn. 91, 108, 491 A.2d 368 (1985). In deciding a motion to strike the trial court must consider as true the factual allegations, but not the legal conclusions set forth in the complaint. Liljedahl Bros., Inc. v. Grigsby, 215 Conn. 345, 348,576 A.2d 149 (1990); Blancato v. Feldspar Corp., 203 Conn. 34,36, 522 A.2d 1235 (1987).
In construing the Connecticut Antitrust Act, Connecticut courts must look to interpretations by federal courts of the federal antitrust laws. Connecticut General Statutes § 35-44b;Elida. Inc. v. Harmor Realty Corp., 177 Conn. 218, 226, 27, A.2d (1979). A fundamental requirement of a viable antitrust CT Page 2291 complaint is the allegation of facts that the plaintiff has suffered "antitrust injury," and thus has standing to assert an antitrust claim. Brunswick Corp. v. Pueblo Bowl-O-Mat. Inc.,429 U.S. 477, 489 (1976). In Associated General Contractors ofCalifornia. Inc v. California State Council of Carpenters,459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983), the United States Supreme Court articulated the following factors relevant to determining whether a party has standing to raise federal antitrust claims: 1) the causal connection between the alleged antitrust violation and the harm to the plaintiff; 2) the existence of an improper motive; 3) whether the injury was of a type that Congress sought to redress with the antitrust laws; 4) the directness of the connection between the injury and the alleged restraint in the relevant market; and 5) the speculative nature of the damages; and 6) the risk of duplicative recoveries or complex apportionment of damages. State of South Dakota v.Kansas City Southern Industries, 880 F.2d 40, 45, 46 (8th Cir. 1989).
Numerous federal courts have held that a developer such as the plaintiff has no standing to assert an antitrust claim for activity which affects competition in the business area of the developer's actual or proposed tenant or customer. The United States District Court for the District of New Jersey recently dismissed an antitrust claim brought by the owner of a shopping center against a supermarket operator. Acme Markets, Inc v.Wharton Hardware and Supply Corp, 1995-1 Trade Cas. (CCH) ¶ 70, 987, at 74,570 (D.N.J. 1995). In Acme the owner and landlord of a shopping center alleged that it reached a tentative agreement with Acme, a supermarket operator, to lease space in the shopping center. Negotiations fell through before a final lease was signed. Thereafter, the landlord entered into a lease with another supermarket company. Acme sued the landlord seeking to prevent it from leasing to competing supermarket on the basis of a restrictive covenant in the chain of title to the shopping center property barring the development of a supermarket. The landlord responded by filing an action which alleged that the restrictive covenant which Acme sought to enforce violated state and federal antitrust law because it unreasonably restrained competition in the supermarket business. The court dismissed the landlord's antitrust claims against Acme, holding that because the landlord was not a competitor in the grocery market it lacked standing to assert claims based on alleged restraints of trade in that market. The court in Acme stated: CT Page 2292
 Acme contends that Wharton is not injured by the alleged antitrust violation and is not a proper party to bring the action. Acme's position is well supported by case law. For example, a shopping center owner's injuries from an alleged restraint of trade in the retail supermarket industry have been held to be too remote and indirect to support standing under Section 4 of the Clayton Act. Randolf Assoc. V. Wakefem Food Corp, 1982 WL 1819 (D.N.J. 1982). Other courts have concluded that no standing existed in factually similar circumstances. See Rosenberg v. Cleary, Gottlieb, Steen and Hamilton, 598 F. Sup. 642, 645-46
(S.D.N.Y. 1984) (owner of supermarket development did not have standing under section 4 of the Clayton Act to challenge restrain of trade in retail grocery business); Southaven Land Co. V. Malone Hyde, Inc., 715 F.2d 1079, 1087 (6th Cir. 1983) (lessor of commercial premises did not have antitrust standing to challenge alleged violation of section 2 of the Sherman Act in retail grocery industry); Henke Enter., Inc. V. Hy-vee Food Stores, Inc., 749 F.2d 488, 490 (8th Cir. 1984) (hardware store tenant in shopping center lacked standing to bring antitrust action against vacating tenant who allegedly restrained trade in retail grocery market through restrictive covenant in assignment of lease).
Acme, supra, at p. 74,573.
The plaintiff in the Rosenberg case, referred to by the court in Acme, was a developer who sought to construct a supermarket on a parcel of land in the vicinity of other supermarkets. During construction, several competing supermarkets filed a series of unsuccessful lawsuits seeking to enjoin construction. Although construction was ultimately completed, the plaintiff sued the law firm that represented the competing supermarkets in the prior actions, alleging that those actions constituted a conspiracy in restraint of trade in violation of the Sherman Antitrust Act of 1890. The developer claimed damages consisting of lost rents and higher material costs and building charges. The court acknowledged that the complaint did meet several of the requirements of Associated General Carpenters, supra., because it CT Page 2293 alleged both a causal connection between the defendant's actions and its claimed injury and an improper motive. Nevertheless, the court dismissed the action because the complaint did not allege either an injury within the scope of the antitrust laws or a sufficiently direct injury:
 Because [Developer] is not a direct participant in the retail grocery market, it is not entitled to the protections of section 4 of the Clayton Act[1]. Despite [Developer's] efforts to distinguish the facts, this case falls squarely within the Sixth Circuit's holding in Southaven Land Co. v. Malone Hydel, Inc., 715 F.2d 1079 (6th Cir. 1983). In Southaven, the owner and lessor of a commercial property leased to a grocery store charged the defendant, a competing grocery, with violating the antitrust laws. The Court held that because Southaven was "neither a consumer or participant in the relevant market," id. at 1087, and its injury was more remote than its tenant, the supermarket, it lacked antitrust standing under the principles of Associated General Contractors. In the case at hand, both supermarket customers and [Developer's] tenant are in a position to allege a more direct injury than [Developer], and allowing a suit by [Developer] would permit a duplicative recovery. Its lack of actual involvement in the retail grocery market makes it an inappropriate complainant of an antitrust violation in that market.
598 F. Supp at 645.
The plaintiff has correctly cited Blue Shield of Virginia v.McCready, 457 U.S. 465, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982), as holding that a plaintiff who is not involved in the business market of the defendant may, nonetheless, have antitrust standing if their injury "was inextricably intertwined with the injury the conspirators sought to inflict" on the market. Id. At 483-84. The plaintiff argues that although it is not involved in the supermarket business, its injury is "inextricably intertwined" with the defendants' alleged attempts to do away with competition in that market within the meaning of McCready.
In McCready the plaintiff, a consumer of services offered CT Page 2294 under her employer's health insurance plan, brought an action against the health insurer and an association of psychiatrists after the health insurer refused to pay for psychotherapy services provided to the plaintiff by a clinical psychologist. The health insurer had a policy of making payment only when the psychotherapy services were provided by a psychiatrist. In addressing the issue of antitrust standing the Court stated:
 The availability of the § 4 remedy to some person who claims its benefit is not a question of the specific intent of the conspirators. Here the remedy cannot reasonably be restricted to those competitors whom the conspirators hoped to eliminate from the market.[15] McCready claims that she has been the victim of a concerted refusal to pay on the part of Blue Shield, motivated by a desire to deprive psychologists of the patronage of Blue Shield subscribers. Denying reimbursement to subscribers for the cost of treatment was the very means by which it is alleged that Blue Shield sought to achieve its illegal ends. The harm to McCready and her class was clearly foreseeable; indeed, it was a necessary step in effecting the ends of the alleged illegal conspiracy. Where the injury alleged is so integral an aspect of the conspiracy alleged, there can be no question but that the loss was precisely "`the type of loss that the claimed violations . . . would be likely to cause.'" Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S., at 489, quoting Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 125 (1969).
457 U.S. at 479.
In response to Blue Shield's argument that McCready should not have antitrust standing due to the danger of duplicative recovery, the Court stated:
 But permitting respondent to proceed in the circumstances of this case offers not the slightest possibility of a duplicative exaction from petitioners. McCready has paid her psychologist's bills; her injury CT Page 2295 consists of Blue Shield's failure to pay her. Her psychologist can link no claim of injury to himself arising from his treatment of McCready; he has been fully paid for his service and has not been injured by Blue Shield's refusal to reimburse her for the cost of his services. And whatever the adverse effect of Blue Shield's actions on McCready's employer, who purchased the plan, it is not the employer as purchaser, but its employees as subscribers, who are out of pocket as a consequence of the plan's failure to pay benefits.[11]
457 U.S. at 475.
In Southaven Land Co., Inc. v. Malone Hyde Inc., supra, the complaint alleged that Southaven was the owner-lessor of retail commercial space in the geographic area of Southaven, Mississippi. Malone was engaged in the wholesale and retail sale of food, drugs and sundries in a multistate area including Southaven. Malone assumed a lease to premises owned by Southaven, which incorporated a covenant restricting the use of the premises to the operation of a retail grocery business. After assuming the lease, Malone executed a series of subleases with successive third parties to operate grocery stores in accordance with the lease restriction. After the last sublessee filed bankruptcy Southaven and Malone entered into negotiations whereby Malone would relinquish its rights under the existing lease and be released from obligations thereunder. Before executing the final cancellation agreement Malone learned that Southaven was prepared to enter into a new lease with a grocery store. Thereafter, Malone refused to sign the cancellation agreement with the purpose to further its monopoly and eliminate competition.
Southaven brought an action against Malone under § 4 of the Clayton Act. The Sixth Circuit Court of Appeals affirmed the District Court's decision dismissing the action because Southaven did not have antitrust standing in accordance with the factors enumerated in Associated General Contractors, supra. Southaven argued, as does the plaintiff here, that its injury was "inextricably intertwined" with the alleged anticompetitive activity within the meaning of McCready. The Court rejected that argument, stating:
In the case at bar Southaven's injury cannot be CT Page 2296 construed as "inextricably intertwined" within the meaning of McCready, with the injury allegedly inflicted by Malone upon the relevant grocery market so as to make Southaven's injury "of a type that Congress sought to redress in providing a private remedy for violations of the antitrust laws."[citations omitted]. Southaven is not alleged to be a member of a class of "consumers" of grocery products or a class otherwise manipulated or utilized by Malone as a fulcrum, conduit or market force to injure competitors or participants in the relevant product and geographical markets. Although Southaven's injury may be a tangential by-product of Malone's averred monopolistic conduct, such injury is not inextricably intertwined to any injury inflicted upon the relevant market. Accordingly, Southaven is not a consumer, customer, competitor or participant in the relevant market or otherwise inextricably intertwined with any such entity. Its injury is not sufficiently linked to the pro-competitive policy of the antitrust laws.
715 F.2d at 1086 and 1087.
In considering the "direct victim" factor of AssociatedGeneral Contractors, the Court in Southaven stated:
 That there exists, in the case at bar, more direct victims of Malone's alleged monopoly follows as an inescapable corollary to the foregoing observation that Southaven is neither a consumer or participant in the relevant market. These two categories of potential plaintiffs — consumers and participants — are obviously more direct victims.
715 F.2d at 1097.
In this case the plaintiff does not allege that it is involved in the supermarket, business. Moreover, its potential supermarket customer/tenant and the consumer customers of such a tenant would be the more direct victims of the defendants' alleged anticompetitive activities. The plaintiff's injuries are even more speculative than the injuries of the developer inRosenberg, who claimed specific losses of rental and increased costs due to delay, or those of the landlords in Acme and CT Page 2297Southaven, who had identified supermarkets with whom they had entered into agreements. Here the plaintiff alleges that it is a developer with an option on a piece of land "suitable for a supermarket". It does not allege that the land is unsuitable for development for another purpose, nor does it identify any supermarket operator with whom it had entered into any lease or development contract.
Notwithstanding the plaintiff's attempt to distinguish the facts of this case, they fall squarely within the holdings of the courts in Southaven, Acme Markets, Randolf Assoc., and Rosenberg.
The plaintiff does not have antitrust standing.
Since it lacks antitrust standing, the plaintiff cannot maintain its claim for injunctive relief, which is also based on a claimed violation of the Connecticut Antitrust Act. Cargill,Inc. v. Monfort of Colo., Inc., 479 U.S. 104 (1986). In Cargill
the Court held that antitrust injury is a prerequisite for private injunctive relief. Comparing Clayton Act § 16, concerning injunctions, with § 4, concerning damages, the Court said:
 The wording concerning the relationship of the injury to the violation of the antitrust laws in each section is comparable. Section 4 requires proof of injury "by reason of anything forbidden in the antitrust laws"; § 16 requires proof of "threatened loss or damage by a violation of the antitrust laws." It would be anomalous, we think, to read the Clayton Act to authorize a private plaintiff to secure an injunction against a threatened loss for which he would not be entitled to compensation if the injury actually occurred.
For the reasons set forth above the Motion to Strike is granted.
By the court,
AURIGEMMA, J.