[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO STRIKE
FACTS
On August 20, 1996, the plaintiffs, Automatic Cigarette Sales, Inc. (ACS) and Joseph v. Ficca (Ficca), doing business as Automatic Coin Machine, filed a three count complaint against the defendants, Aura Wilson and Douglas P. Waterbury. On November 7, 1996, the plaintiffs filed their answer, special defenses and a five count counterclaim against the defendants. In count one of the counterclaim, the defendants allege that ACS violated the Connecticut Antitrust Act, General Statutes § 35-24 et seq., in that ACS's contracts were created in order to monopolize or in CT Page 563-A an attempt to monopolize the leasing of vending equipment in Connecticut.
Count two alleges that ACS engaged in unfair and deceptive trade practices in violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. In count two, the plaintiffs incorporate the allegations of count one and further allege that ACS's suit is an attempt to coerce the defendants to accept substandard service at an unreasonable cost and to thwart defendant's right to seek alternative service, and that the contract is unconscionable.
Counts three and four, which are substantively identical to counts one and two, respectively allege, against Ficca, violations of the Connecticut Antitrust Act and CUTPA. Additionally, count five alleges breach of contract against ACS.
On December 23, 1996, the defendants, pursuant to Practice Book § 152, moved to strike counts one through four of the defendants' counterclaim. The plaintiffs move to strike counts one and three on the ground that the allegations of antitrust violations are, as a matter of law, legally insufficient. The plaintiffs also move to strike counts two and four on the ground that a claim of unconscionability is insufficient to support a CUTPA claim. CT Page 563-B
As required by Practice Book § 155, the defendant has filed a memorandum in support of its motion to strike, and the plaintiff has timely filed a memorandum in opposition.
"The purpose of a motion to strike is to contest the legal sufficiency of the allegations of any complaint, counterclaim, or cross complaint to state a claim upon which relief can be granted." Waters v. Autouri, 236 Conn. 820, 825, 676 A.2d 357
(1996). "In ruling on a motion to strike, the court is limited to the facts alleged in the complaint"; Id.; and the grounds specified in the motion. Blancato v. Feldspar Corp.,203 Conn. 34, 44, 522 A.2d 1235 (1987). "The motion to strike admits all facts well pleaded." Mingachos v. Central Broadcasting Systems,Inc., 196 Conn. 91, 108, 491 A.2d 368 (1985). "It does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." Novametrix Medical Systems, Inc. v. BOC Group,Inc., 224 Conn. 210, 215, 618 A.2d 25 (1992). "The court must construe the facts in the complaint most favorably to the plaintiff." Waters v. Autuori, supra, 236 Conn. 825. "The allegations of the pleading involved are entitled to the same favorable construction a trier would be required to give in admitting evidence under them and if the facts provable under its allegations would support a defense or a cause of action, the motion to strike must fail." Clohessy v. Bachelor, 237 Conn. 31, CT Page 563-C 33 n. 4, 675 A.2d 852 (1996).
Counts One and Three
The defendants contend that the plaintiffs anti-competitive activities violate General Statutes § 35-27 and § 35-29. General Statutes § 35-27 provides that:
 "[e]very contract, combination, or conspiracy to monopolize, or attempt to monopolize, or monopolization of any part of trade of commerce is unlawful."
"General Statutes § 35-27 is patterned after § 2 of the Sherman Act, 15 U.S.C. § 2. It enumerates three separate offenses: (1) contract, combination or conspiracy to monopolize; (2) monopolization; and (3) attempt to monopolize. The first offense requires a plurality of actors." (Citations omitted; internal quotations omitted.) Shea v. First Federal Savings Loan of New Haven, 184 Conn. 285, 304, 439 A.2d 997 (1981).
Section 2 of the Sherman Act "directs itself not against conduct which is competitive, even severely so, but against conduct which unfairly tends to destroy competition itself."Spectrum Sports, Inc. v. McQuillian, 506 U.S. 447, 113 S.Ct. 884, CT Page 563-D122 L.Ed.2d 247, 258 (1993). To demonstrate attempted monopolization, the defendants must prove that the plaintiffs have engaged in predatory or anti-competitive conduct with specific intent to monopolize and that there is a dangerous probability of the plaintiffs achieving monopoly power. Id., 259.
Additionally, General Statutes § 35-29 states that:
 "Every lease, sale or contract for the furnishing of services or for the sale of commodities, or for the fixing of prices charged therefor, or for the giving or selling of a discount or rebate therefrom, on the condition or understanding that the lessee or purchaser shall not deal in the services or the commodities of a competitor or competitors of the lessor or seller, shall be unlawful where the effect of such lease or sale or contract for sale or such condition or understanding may be to substantially lessen competition or tend to create a monopoly in any part of trade or commerce and where such goods or services are for the use, consumption or resale in this state."
Section § 35-29 is patterned after section 3 of the CT Page 563-E Clayton act. State v. Hossan-Maxwell, Inc., 181 Conn. 655, 661,436 A.2d 284 (1980). "[I]t is appropriate to adopt the Clayton act test in determining whether a violation of § 35-29 has occurred." Id., 662. "Section 3 of the Clayton Act makes it unlawful for any person engaged in commerce, in the course of such commerce to make tie-in sales or enter exclusive dealing arrangements, where the effect may by to substantially lessen competition or tend to create a monopoly in any line of commerce." (Internal quotations omitted.) Gulf Oil Corp. v. CoppPaving Co., 419 U.S. 186, 194 (1974).
The defendants allege in counts one and three that the contracts at issue were created, solicited and maintained by the plaintiffs with the intent to monopolize the leasing of cigarette vending machines and amusement games in Connecticut. Additionally, the defendants allege that there is a dangerous probability that the plaintiffs will attain monopoly power. Such allegations are legally sufficient to allege a violation of §35-27. Furthermore, the defendants allegations that an exclusive dealing agreement existed and that the plaintiffs possessed control over the relevant markets are legally sufficient for a claim under § 35-29.
The plaintiffs argue that the terms contained in the contracts at issue only reasonably restrain trade and therefore, as a matter CT Page 563-F of law, are enforceable. "Under the common law, the well-settled rule is that an anti-competitive covenant ancillary to a lawful contract is enforceable if the restraint upon trade is reasonable." (Citations omitted.) Elida, Inc. v. Harmor Reality Corp.,177 Conn. 218, 225, 413 A.2d 1226 (1979). "To satisfy this requirement o reasonableness, [the Supreme Court has] stated that the restraint must be limited in its operation with respect to time and place and afford no more than a fair and just protection to the interests of the party in whose favor it is to operate, without unduly interfering with the public interest." (Citation omitted.) Id.
Plaintiffs rely on Elida, Inc. v. Harmor Reality Corp., which examined the applicability of the Connecticut Antitrust Act to a restrictive covenant contained in a shopping center lease. The trial court concluded that the restrictive covenant, which provided that the lessor would not rent any other space in the shopping center for the purpose of baking on the premises, was "per se" unreasonable. Elida, Inc. v. Harmor Reality Corp., supra, 222. On appeal, the Supreme Court set aside the judgment and ordered a new trial. The court concluded that the trial court was in error in determining that the plaintiff's lease provision was "per se" illegal.[1] Id., 231. The court further concluded that "[t]he `rule of reason' by which the factfinder weighs all of the circumstances of a case in deciding whether a restrictive CT Page 563-G practice should be prohibited as imposing an unreasonable restraint on competition was the appropriate standard for the trial court to apply." (Citation omitted; internal quotations omitted.) Id.
To determine whether the restraint on trade in this instance is reasonable would require the examination of facts which are beyond the purview of a motion to strike. Accordingly, this court finds counts one and three legally sufficient and denies the plaintiffs' motion to strike with regard to these counts.
Counts Two and Four
"In construing General Statutes 42-110b, we look not only to precedent set by the courts of Connecticut, but also to the interpretations given by the federal courts and the Federal Trade Commission to 5(a)(1) of the Federal Trade Commission Act. General Statutes § 42-110k(b). In FTC v. Sperry HutchinsonCo., 405 U.S. 233, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972), the United States Supreme Court construed § 5 of the Federal Trade Commission Act and cited three factors the FTC considers in determining whether a practice that is neither in violation of the antitrust laws nor deceptive is nonetheless unfair: (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been CT Page 563-H established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen). Statement of Basis and Purpose of Trade Regulation Rule 408, Unfair or Deceptive Advertising and Labeling of Cigarettes in Relation to the Health Hazards of Smoking. 29 Fed. Reg. 8355 (1964). Id., 244-45 n. 5." (Internal quotations omitted.) Prishwalko v. BobThomas Ford, Inc., 33 Conn. App. 575, 584, 636 A.2d 1383 (1994).
"These three factors, known as the "cigarette rule," have been adopted by the courts of this state as criteria in determining whether a practice violates CUTPA. Cheshire MortgageService, Inc. v. Montes, 223 Conn. 80, 105-106, 612 A.2d 1130
(1992); Web Press Services Corp. v. New London Motors, Inc.,203 Conn. 342, 355, 525 A.2d 57 (1987); Sportsmen's Boating Corp. v.Hensley, 192 Conn. 747, 756, 474 A.2d 780 (1984). A prospective plaintiff need not satisfy all three of the criteria; `[a] practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.' Cheshire Mortgage Service, Inc. v. Montes, supra, 106, quoting Statement of Basis and Purpose, Disclosure Requirements and Prohibitions Concerning Franchising and Business Opportunity CT Page 563-I Ventures, 43 Fed Reg. 59, 614, 59, 635 (1978). `Thus, a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy.' (Citations omitted.) Web Press Services Corp. v. NewLondon Motors, Inc., supra." Prishwalko v. Bob Thomas Ford, Inc.,33 Conn. App. 584-85.
The plaintiffs argue that unconscionability cannot constitute a basis for a claim for damages under CUTPA. Research did not reveal and the defendants did not cite authority in support of their proposition. Without determining whether an allegation of unconscionability is legally sufficient to allege a CUTPA claim, this court finds that the contract at issue was not unconscionable.
"Unconscionability is a question of law to be determined by the court in light of all the facts and circumstances of the case." (Citations omitted.) Family Financial Services, Inc. v.Spencer, 41 Conn. App. 754, 762, 677 A.2d 479 (1996). "[T]he test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract." (Internal quotations omitted.) Emlee Equipment LeasingCorp. v. Waterbury Transmission, Inc., 31 Conn. App. 455, 454, CT Page 563-J626 A.2d 307 (1993). "Under that test, the plaintiff's actions must be weighed against the defendant's business experience, the business practices of the community, and the relatively equal bargaining power of the parties." (Citation omitted; internal quotations omitted.) Id. "Courts do not generally finds contracts unconscionable where the parties are businesspersons." (Citations omitted.) Id.
The contracts between ACS and the defendants was for the lease of cigarette vending machines, and the contract between Ficca and the defendants was for the lease of two pool tables. The contract for the cigarette vending machines contained a clause that stated that the contract was for five years and would be renewed unless either party thirty days prior to termination notified the other party, by registered or certified mail, to the contrary. The contract with ACS was entered into in April of 1983. The defendants have had several opportunities to terminate the ACS contract if they felt that the terms were oppressive. Furthermore, both of these contracts were entered into by businesspersons, and there is no allegation that the contracts were entered into in any thing but an arms-length transaction.
However, in support of their CUTPA counterclaims, the defendants allege more than just unconscionability. The defendants also allege that the plaintiffs' violation of the CT Page 563-K Connecticut Antitrust Act, General Statutes § 35-24 et seq. constitutes a violation of CUTPA. A practice may violate CUTPA if it meets one of the criteria of the "cigarette rule." The defendants' allegation that the plaintiffs violated the Connecticut Antitrust Act falls within the penumbra of a statutory concept of unfairness. Accordingly, the defendants have sufficiently alleged a violation of CUTPA, and, therefore, the plaintiffs' motion to strike counts two and four of the defendants' counterclaim is denied.
HON. WALTER M. PICKETT, JR.State Trial Referee