[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] FINDINGS AND MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR PRELIMINARY INJUNCTION
On August 4, 2000, this court issued a brief memorandum of decision and a preliminary injunction in the above-captioned case. Because the motion for injunctive relief concerning conduct due to occur on August 7, 2000 was filed on August 1, 2000, and because the hearing on the motion was conducted from 10 a.m. to 3 p.m. on Friday, August 4, 2000, time did not permit preparation of full findings of fact and discussion of the parties' legal claims, though it was necessary for the court to act on the motion on the same day as the hearing. Having issued a preliminary injunction, the court now provides a further statement of its findings of fact and conclusions of law.
Findings of fact
Anthony Musto, an ophthalmologist, was engaged in the private practice of ophthalmology in the greater Bridgeport area from 1973 until 1996, when he and the other shareholders in a Connecticut professional corporation known as Eye Surgery Associates, P.C. sold their ophthalmology practice to OptiCare Eye Health Centers, Inc. Dr. Musto owned one third of the shares of Eye Surgery Associates, P.C. The date of the sale was July 31, 1996.
The agreement of purchase and sale, which Dr. Musto read and initialed on every page, provided that the seller was transferring the ophthalmology practice that the seller was conducting in two locations, 3060 Main Street in Stratford and 827 North Avenue in Bridgeport. The seller agreed to convey the practice and "substantially all of its CT Page 9638 related assets" including, specifically, all patient lists, the phone numbers used by the two offices, all patient records, files and charts, and "use of the Practice's name and all goodwill associated therewith." (Ex 1. p. 3)
The agreement provided that the execution by all three of the practitioners whose practice the buyer was acquiring was a condition to the buyer's obligation to close. The employment agreements were with Opticare, P.C. as employer. The agreement by which the three practitioners sold their practice included the text of the employment agreement. That employment agreement contains a covenant not to compete that provides in pertinent part as follows:
13. Covenants Not to Compete
 (a) The Employee and the Employer have discussed the Employee's expected involvement with the Employer's patients, referring physicians and optometrists and hospital arrangements, and the Employee understands how his use of such contacts and information in competition with the Employer would be harmful to the Employer. In recognition thereof, the Employee hereby covenants that if his employment is terminated for any reason, other than by the Employer without cause pursuant to paragraph 4(d) above, he will not, at any time during the term of this Agreement and during a period of eighteen (18) months after the date of the termination of the Employee's employment with the Employer. . ., whether such termination is during or after the expiration of the term of this Agreement, engage in the practice of any branch of ophthalmology or ophthalmic surgery, alone or with others as principal, partner or employee, in any mater or capacity within those portions of the State of Connecticut which are within fifteen (15) mile radiuses of the Employer's offices in Stratford or Bridgeport, Connecticut. . .
Dr. Musto signed the employment agreement and initialed each page on which the above covenant not to compete is set forth.
Dr. Musto continued his practice as an employee of Opticare, P.C. from August 1, 1996 to August 4, 2000. On or about August 1, 1999, he gave Opticare, P.C. the one-year notice of voluntary termination of his employment that the agreement required. He makes no claim that his resignation was other than voluntary. He plans to rent space that was CT Page 9639 formerly used by another ophthalmologist, Dr. Phillip Raines, on the Post Road in Fairfield, Connecticut, and to practice ophthalmology in that location. He also intends to perform ophthalmologic surgery at Bridgeport Hospital. Both before and during his employment by OptiCare, Dr. Musto performed services to his patients not only at his practice's offices in Bridgeport and Stratford but also at Bridgeport Hospital, where he performed eye surgery. At the time he signed the agreement to sell his practice and the employment agreement containing the covenant not to compete, he was aware that the restrictions in the covenant would apply to his treatment of patients at hospitals within fifteen miles of the Bridgeport and Stratford offices, and he presented no evidence of any agreement to exclude his hospital practice from the scope of the covenant.
OptiCare Eye Health Centers, Inc. has closed the office on North Avenue in Bridgeport and is consolidating its services to patients in the Bridgeport and Stratford areas to a new office near the Stratford office in which Dr. Musto and his colleagues practiced before they sold their practice to Opticare Eye Health Centers, Inc. OptiCare intends to serve the patients from the practice it acquired from Dr. Musto and his colleagues in the relocated Stratford office. A tally by zip code of the patients who were served in the Stratford office indicates that nearly two hundred live in Bridgeport and travel to Stratford for eye care.
Dr. Musto stipulated that both the hospitals where he performs surgery and the office location in Fairfield where he intends to practice are within fifteen miles of the office locations identified in the covenant not to compete.
Dr. Musto received approximately $590,000 as his share of the value of the stock of the practice that he and his fellow shareholders sold to Opticare Eye Health Centers, Inc. During the period of his employment, he received a salary; and the employment agreement required him to pay over to his employer all compensation for any medical services he provided to patients, including fees for his surgeries at hospitals in Bridgeport.
Dr. Musto has admitting privileges at St. Vincent's Hospital in Bridgeport and at Bridgeport Hospital, where he is Chief of Ophthalmology, an unpaid position in a hospital which apparently does not employ its own ophthalmology staff but provides services to hospital patients though private practitioners who have privileges at the hospital. During Dr. Musto's employment at OptiCare, P.C., he served as an attending and as chief of ophthalmology, and all of his services were billings of his employer, OptiCare, P.C. Other ophthalmologists perform services at Bridgeport Hospital, including various kinds of eye surgery, however, no other ophthalmologist with privileges at that hospital CT Page 9640 performs three somewhat rare procedures that Dr. Musto performs: dactocystorhinostomy, removal of eyelid tumor and blethoroplasty. OptiCare Eye Health Centers, Inc. does not seek to enjoin him from performing those surgeries or from furnishing in-hospital follow-up care for those specific surgeries.
Legal Standards
Preliminary Injunction
In order to obtain injunctive relief; a party must establish a reasonable degree of probability of success on the merits of its claim and the imminence of substantial irreparable injury for which there is no adequate remedy at law. The court must also consider the harm to the respective parties and to any public interests that may be affected by the entry or failure to enter injunctive relief Griffin Hospital v.Commission on Hospital and Health Care, 196 Conn. 451, 457 (1985), citingOlcott v. Pendleton, 128 Conn. 292, 295 (1941).
Irreparable injury and lack of an adequate remedy at law are considered to be established by the nature of the threatened conduct where a party seeks to enforce a covenant not to compete. Lampson Lumber Co. v.Caporale, 140 Conn. 679, 685 (1954). Restrictive covenants are recognized as valuable business assets that are entitled to protection. TorringtonCreamery, Inc. v. Davenport, 126 Conn. 515, 521 (1940). Loss of the benefits of compliance with such agreements is recognized as an irreparable injury, Mattis v. Lally, 138 Conn. 51, 56 (1951); since a party's actual injury is not, because of its nature, susceptible to determination. Case v. Zieff 10 Conn. Sup. 530, 532 (1942).
Enforceability of a covenant not to compete
A party challenging the enforceability of a restrictive covenant has the burden of proving that the covenant is not enforceable. Scott v.General Iron Welding Co., 171 Conn. 121 (1976); Mattis v. Lally, supra, 138 Conn. at 55. The courts have recognized some differences in approach to covenants arising from a sale of the good will of a business, as distinguished from covenants entered into solely as part of an employment agreement. Where the context of the covenant not to compete is the sale of the good will of an established business, the courts recognize that enforcement of the covenant is necessary to prevent the seller from depriving the buyer of the value of the transaction.
As the Connecticut Supreme Court explained in Mattis v. Lally, supra,138 Conn. at 54-55:
CT Page 9641 Good will in the sense here used means an established business at a given place with the patronage that attaches to the name and the location. It is the probability that old customers will resort to the old place. . . Having paid for "good will," the plaintiff was entitled to have reasonable limitations placed upon the activities of the defendant to protect his purchase. If the plaintiff could hold the patronage of the defendant's old customers and secure that of others who might be looking for the services of a barber at the established location, he would be reasonably assured of carrying on the business profitably. If; however, the defendant should open up another shop in the immediate vicinity, it was to be expected that his old personal customers and others would seek his services.
(Citations omitted.)
The Court in Mattis upheld the restrictive covenant and noted that "[t]o excuse [the defendant] from the performance of his agreement would amount to returning to him a large part of what he has sold and would work a real hardship on the plaintiff." Id., 56.
When OptiCare Eye Health Centers, Inc., bought the good will of Dr. Musto's ophthalmology practice, it bought the asset of continued patronage from people who had been patients of that practice, as well as the prospect of increasing the patient base in the locale through word-of-mouth about the practice. A covenant not to compete that is ancillary to a sale of a business is enforceable if the restraint upon trade is reasonable. Elida. Inc. v. Harmor Realty Corp., 177 Conn. 218,225 (1979). The restraint is reasonable if it is limited in its operation with respect to time and place and affords no more than fair and just protection of the party in whose favor it is to operate, without unduly interfering with the public interest. Elida. Inc. v. Harmor RealtyCorp., supra, 177 Conn. at 226; Lampson Lumber Co. v. Caporale,140 Conn. 679, 683 (1954); Mattis v. Lally, supra, 138 Conn. at 54.
The time limitation in the covenant not to compete that is at issue in the case before this court is reasonable. Eighteen months is a period that is short enough not to cause an unwarranted hardship or limitation on Dr. Musto's ability to start another practice.
The geographical area specified is also reasonable, in that it is justified by the circumstances of the kind of business sold and the market that is reached from the business locations that were part of the CT Page 9642 sale. Dr. Musto testified that people seeking eye care services are unlikely to travel more than one town away to visit an ophthalmologist for ordinary care. The fifteen mile restriction specified in the covenant is thus no greater than is necessary to protect the good will asset that OptiCare paid for, and it allows Dr. Musto to practice so long as he does it outside the area in which it can reasonably be expected that Opticare would draw patients to an office in or near the location of the practice it bought from him. The fifteen-mile radius from the location of the purchased practice was not shown to be a larger area than was reasonable to protect the good will asset from reappropriation by its seller, and it leaves Dr. Musto free to develop a new patient base that is not likely to diminish his prior practice, which he sold for a considerable price to OptiCare. The geographical scope of the covenant is well within the distance found to be reasonable even in cases in which only an employment contract, not the sale of a business and its good will, was at issue. A statewide restriction was held to be reasonably necessary to protect the employer's interest in Scott v. General Iron Welding Co., 171 Conn. 132
(1976), and a thirty-mile radius was found to be reasonably necessary to protect the good will purchased in Sagarino v. SCI Connecticut FuneralServices. Inc., CV000499737, 2000 WL 765260 (Conn.Super. May 22, 2000).
Dr. Musto argued that Opticare had closed the Bridgeport office and that it was therefore not reasonable to enforce the covenant that prevents him from opening an office within fifteen miles of that location. The statistics on use of the Stratford office, mentioned above, suggest that the patient base in Bridgeport may be transferable to the new Stratford office. The purchase of the good will of the Bridgeport office entitles Opticare to try to effect such a transfer of allegiances rather than lose these patients to a nearby practice commenced by Dr. Musto, who was paid for this asset. Unlike the applicants for injunctive relief in Timenterial v. Dagata, 29 Conn. Sup. 180 (1971), andTrans-Clean Corp. v. Terrell, CV 08-148039, 1998 WL 142436 (Conn. Super March 17, 1998), the movant has shown that it does business in the geographical area defined by the restictive covenant, and that enforcement serves to protect it in an area in which it is actually doing business.
In Scott v. General Iron Welding Co., supra, 171 Conn. at 137 (1976), and Robert S. Weiss Associates, Inc. v. Wiederlight, 208 Conn. 525, 529
n. 2 (1988), the Connecticut Supreme Court identified five criteria by which a court should assess the reasonableness of a restrictive covenant in an employment contract. That case did not involve the context of a sale of the good will of a business or professional practice. The criteria identified by the Court are I) the length of time the restriction is to be in effect, 2) the geographical area covered by the restriction; 3) the degree of protection afforded to the party in whose CT Page 9643 favor the covenant is made; 4) the restrictions on the employee's ability to pursue his occupation; and 5) the extent of interference with the public's interests. A covenant that is unreasonable in any one of these regards may be held unenforceable New Haven Tobacco Co. v. Perrelli,11 Conn. App. 636, 639 n. 2 (1987). To the extent that these criteria are also applicable to a contract involving the sale of the good will of a business or office property, the court analyzes the facts concerning these criteria as follows.
The first three criteria are discussed above, and the court finds that the covenant has not been shown to be unreasonable in any of these respects. Dr. Musto contends that he would be unreasonably curtailed in practicing his profession if the covenant were enforced, because his admitting privileges are at hospitals within the fifteen-mile radius subject to the restriction. Dr. Musto conceded that other hospitals in Fairfield County and in nearby New Haven County grant admitting privileges to ophthalmologists and that he had not applied for privileges at any of these hospitals, though a year has passed since he notified OptiCare that he would end his employment. Though he testified, with no clear basis, that he thought that Norwalk Hospital was a closed practice, that is, one that was not admitting additional physicians, Nancy Noll testified that in the course of seeking privileges for other OptiCare practitioners, she had learned that the practice was no longer closed. Dr. Musto offered no convincing evidence to support any conclusion that he would not be able to practice at other hospitals outside the area subject to the restriction.
Dr. Musto further argued that the public interest in convement access to eye surgery at Bridgeport Hospital would be disserved by enforcement of the covenant. He presented no testimony to the effect that there are no other ophthalmologists on the staff there nor that there is a shortage of ophthalmologists in the area that is subject to the restriction. He argued that he is the sole practitioner with privileges at Bridgeport Hospital whose surgical repertoire includes three unusual procedures. OptiCare does not, however, seek to enjoin him from offering those specific procedures and their aftercare, and it has thus sought relief that does not impinge the only public interest that this court finds was actually raised.
Even if the movant had not exempted these procedures from its application for relief; however, this court finds that the preclusion of these procedures at Bridgeport Hospital was not shown to affect the public interest to such a degree that the restrictive covenant must be held unenforceable. Dr. Musto performs the three procedures infrequently. While he and Mary Ellen Kosturko, a nursing administrator at Bridgeport Hospital, speculated that patients needing eye surgery do CT Page 9644 not like to travel, the court is unconvinced that people needing these unusual and even rare procedures in the next eighteen month would fail to obtain them at one of the many hospitals in Fairfield and New Haven counties. Nancy Noll testified that ophthalmologists employed by OptiCare at Waterbury Hospital perform the tear duct and lid surgeries that Dr. Musto performs. Possible inconvenience to a small number of people does not constitute an impact on the public interest considerable enough to deprive one party to a contract of the benefit of its bargain, when it has afforded the employee compensation not just for his services but for the good will of his practice.
The court finds that it is probable that the movant will prevail on the merits of its claim for enforcement of the covenant not to compete, and that Dr. Musto has failed to demonstrate that the restrictions are unreasonable in duration, geographical extent, or otherwise. The court further finds that the movant will suffer irreparable harm to its interests if the covenant is not enforced, and the balance of hardships, including the claimed hardship to the public, inclines in favor of the party seeking injunctive relief The movant has no adequate remedy at law because of the recognized difficulty in establishing the diminishment of the movant's business by the establishment by Dr. Musto of a practice nearby.
Conclusion
On the basis of the foregoing, the court finds that the application for a temporary injunction should be and is hereby granted. The scope of the relief ordered has been stated in the ruling of August 4, 2000.