CATHERINE PRISHWALKO *v.* BOB THOMAS FORD, INC. (11837)

DUPONT, C. J., FREEDMAN and SCHALLER, Js.

Argued November 4, 1993—decision released February 8, 1994

*Joanne S. Faulkner,* for the appellant (plaintiff).

*Matthew T. Paladino,* for the appellee (defendant).

DUPONT, C. J. The plaintiff appeals from the trial court's judgment following a directed verdict for the defendant on both counts of the plaintiff's complaint (*Gray, J.*) and from its denial of summary judgment for the plaintiff on the defendant's special defense (*Licari, J.*). The plaintiff sought damages arising out of her purchase of an automobile from the defendant for breach of warranty and under the Connecticut Unfair Trade Practices Act (CUTPA, General Statutes § 42-110a et seq.). The defendant's special defense was that its repurchase of the plaintiff's automobile and cancellation of all of her repair bills constituted an accord and satisfaction of the plaintiff's claims. We agree with the plaintiff's assertion that the trial court improperly directed a verdict against her on both counts of her complaint and, accordingly, remand the case for a new trial.

On November 25, 1985, the plaintiff purchased a used 1983 Pontiac Phoenix from the defendant, Bob Thomas Ford, Inc., a Hamden automobile dealership, for a retail price of $4850. The purchase was financed by the Ford Motor Credit Company for the total price of $6455.60, including the finance charge, sales tax and other fees. The thirty day limited warranty provided to the plaintiff by the defendant and an "Odometer Statement" signed by a representative of the defendant both listed 38,114 miles as the vehicle's odometer reading.

The plaintiff began to experience problems with the automobile immediately after she bought it. She testified that she had to return the car to the defendant dealership for repairs at least sixteen times during the first six months she owned it and estimated that she did not have use of the car for at least twenty-eight days during that period. Among the problems with the car were a defective gas tank that caused repeated stalling, oil and antifreeze leaks, burst hoses, blown fuses, electrical malfunctions including the horn's spontaneous sounding at 2 o'clock one morning, a faulty timing chain, misalignment, trouble with the alternator, a leaky trunk, a mysteriously appearing dent, and a heater that ceased functioning in the middle of winter. The defendant's repeated efforts at repairing the vehicle led only to further problems.

The plaintiff's complaint to the department of motor vehicles prompted an investigation that resulted in the discovery that the vehicle's odometer had been rolled back 50,000 miles by a prior owner, who had also altered the relevant paperwork. The defendant dealership had purchased the vehicle subsequent to the rollback, and the plaintiff did not suggest that the defendant knew of the tampering. The plaintiff testified that she would not have purchased the car if she had known its true mileage was over 88,000. The defendant agreed to repurchase the vehicle from the plaintiff. The defendant determined that it owed the plaintiff $4850, the original retail price of the car, and on February 27, 1987, presented the plaintiff with a check for $2788.20. The defendant used the balance of $2061.80 to pay off the loan from the Ford Motor Credit Company so that the defendant could take title to the car. The plaintiff testified that at that time, she had spent $4222.25 on payments for the returned automobile, exclusive of the balance of $2061.80 owed to the credit company.

The plaintiff brought suit against the defendant by a complaint dated February 29, 1988. She claimed that the defendant had breached its warranty as to the mileage of the car, and that the defendant had committed unfair and deceptive acts and practices within the meaning of CUTPA. The plaintiff sought compensation for all of the payments she had made on the car prior to its repurchase, along with her repair costs, taxes, insurance, mileage, wages lost because of time she had been absent from work in efforts to repair the vehicle, and her expenses in maintaining a substitute vehicle. In its answer, the defendant denied that it breached a warranty to the plaintiff and denied having committed deceptive or unfair acts and practices, and also alleged as a special defense that its repurchase of the vehicle from the plaintiff constituted an accord and satisfaction of her claim.

The defendant moved for a directed verdict at the conclusion of the plaintiff's case. After conferring with counsel for both parties, the court stated that it did not believe that the plaintiff had set forth a prima facie case as to either count of its complaint and granted the defendant's motion. By direction of the court, the jury found the issues for the defendant, and judgment was rendered for the defendant.

I

The plaintiff appealed from the trial court's judgment in accordance with the directed verdict without first moving for the trial court to set aside the verdict. General Statutes § 52-228b[1] requires that a written motion

[1] General Statutes § 52-228b provides: "No verdict in any civil action involving a claim for money damages may be set aside except on written motion by a party to the action, stating the reasons relied upon in its support, filed and heard after notice to the adverse party according to the rules of the court. No such verdict may be set aside solely on the ground that the damages are excessive unless the prevailing party has been given an opportunity to have the amount of the judgment decreased by so much

to set aside a verdict be filed in civil actions involving claims for money damages when the basis for the motion relates to either a sufficiency of the evidence claim or to an erroneous ruling of a trial court. *Pietrorazio* v. *Santopietro,* 185 Conn. 510, 515, 441 A.2d 163 (1981); see also Practice Book § 320.[2] "We have applied the statute and the rule to directed verdicts as well as to those rendered by a jury without the order of a court. *Dunham* v. *Dunham,* 204 Conn. 303, 310–11, 528 A.2d 1123 (1987); *Atlantic Richfield Co.* v. *Canaan Oil Co.,* 202 Conn. 234, 249–50, 520 A.2d 1008 (1987); see *Pagani* v. *BT II, Limited Partnership,* 24 Conn. App. 739, 750, 592 A.2d 397, cert. dismissed, 220 Conn. 902, 593 A.2d 968 (1991)." *Saporoso* v. *Aetna Life & Casualty Co.,* 221 Conn. 356, 361–62, 603 A.2d 1160 (1992).

The plaintiff argues that a motion to set aside the verdict would have been redundant and futile in this case because of the trial court's "adamant posture" that deliberate misrepresentation was required to prove a CUTPA violation. A motion to set aside the verdict "serves at least four useful functions: (1) it allows the trial court, in the less hectic atmosphere of a posttrial proceeding, to reconsider its rulings and, if they are determined to have been erroneous as well as harmful, to grant a new trial without the necessity of an appeal; (2) it provides an opportunity for the court to

thereof as the court deems excessive. No such verdict may be set aside solely on the ground that the damages are inadequate until the parties have first been given an opportunity to accept an addition to the verdict of such amount as the court deems reasonable."

[2] Practice Book § 320 provides: "Motions in arrest of judgment, whether for extrinsic causes or causes apparent on the record, motions to set aside a verdict and motions for new trials, unless brought by petition served on the adverse party or parties, must be filed with the clerk within five days after the day the verdict is accepted or judgment rendered; provided that for good cause the court may extend this time. The clerk shall notify the trial judge of such filing. Such motions shall state the specific grounds upon which counsel relies."

explain and to justify the challenged rulings in a written memorandum far more effectively and clearly than is possible at trial; (3) after a verdict is rendered and before an appeal is taken it provides the only occasion for counsel to appear in court and to present arguments in support of their positions, which are ordinarily formulated much more clearly and persuasively than at trial; and (4) it induces counsel for the parties to reevaluate the strength of their positions in the light of a jury verdict and thus may lead to a settlement of the litigation." Id., 363.

Here, even if the plaintiff believed that the trial court would not have granted her motion to set aside the verdict, such a motion would nonetheless have given the court an opportunity to reconsider its position or to issue a written memorandum of decision and would have given the plaintiff the opportunity to prepare a more persuasive argument for the trial court. It was not for the plaintiff to decide whether a motion to set aside the verdict was worthwhile; the statute and the rule of practice required it, and the plaintiff should have filed it.

When an appellant has failed to move to set aside the verdict as required by General Statutes § 52-228b and Practice Book § 320, plain error is the appropriate standard of review. *Saporoso* v. *Aetna Life & Casualty Co.*, supra, 363; *Solomon* v. *Levett,* 30 Conn. App. 125, 127, 618 A.2d 1389 (1993); *Denby* v. *Voloshin Cadillac, Inc.,* 3 Conn. App. 181, 183, 485 A.2d 1360, cert. dismissed, 196 Conn. 802, 491 A.2d 1105 (1985). "The court may in the interests of justice notice plain error not brought to the attention of the trial court." Practice Book § 4185. " 'Such review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings.' " *Saporoso* v. *Aetna Life & Casualty Co.,*

supra, quoting *State* v. *Hinckley,* 198 Conn. 77, 87–88, 502 A.2d 388 (1985). Here, our review is restricted to plain error. We conclude, however, that the plaintiff sets forth a claim that satisfies that limited standard of review.

## II

At the close of the plaintiff's case, the trial court granted the defendant's motion for a directed verdict on both counts of the plaintiff's complaint. "A directed verdict is justified if on the evidence the jury could not reasonably and legally reach any other conclusion . . . ." (Citations omitted; internal quotation marks omitted.) *Churchill* v. *Skjerding,* 31 Conn. App. 247, 251, 624 A.2d 900, cert. denied, 226 Conn. 914, 628 A.2d 986 (1993); see Practice Book § 321. The transcript of the discussion between the trial judge and the parties' attorneys following the close of the plaintiff's case reveals that the defendant's attorney orally moved for a directed verdict on the ground that the plaintiff had not presented a prima facie case under CUTPA because she had not set forth sufficient evidence to establish a substantial injury. The court treated that motion as being aimed at the entirety of the plaintiff's complaint and granted it as to both the CUTPA claim and the breach of warranty claim.

The focus of the court's attention during its discussion with the parties' attorneys was primarily the legal requirements necessary to establish a CUTPA violation. Also factoring into the court's decision were a discussion of the plaintiff's failure to present to the court cases supporting her position that an innocent misrepresentation can constitute a CUTPA violation, an argument that the court did not accept, and a debate over the degree to which the plaintiff was made whole by the defendant when it repurchased the car from the

plaintiff.[3] We hold that it was plain error for the trial court to grant the defendant's motion for a directed verdict because we conclude that the plaintiff had established a prima facie case under both theories of her complaint.

### A

We first address the plaintiff's claim for relief under CUTPA. She alleged in her complaint that the defendant committed various unfair and deceptive acts and practices in violation of CUTPA, the most notable being the defendant's unknowing misrepresentation of the vehicle's mileage to the plaintiff. General Statutes § 42-110b (a) states, "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."[4]

The transcript indicates that throughout the discussion between the trial court and the parties' attorneys

---

[3] The judge announced his ruling on the motion for a directed verdict shortly after he had asked the plaintiff's attorney, "Do you honestly think that if everything was found in your client's behalf, that she could walk out of here without having to give any credit for the almost eleven thousand miles she put on the vehicle herself over a period of fourteen months by her own testimony, that no credits would be given?" When plaintiff's counsel answered in the affirmative, the judge said that "there are no free lunches in this world . . . [a]nd there aren't any under the law," and announced that he was going to grant the motion for a directed verdict.

[4] General Statutes § 42-110b further provides: "(b) It is the intent of the legislature that in construing subsection (a) of this section, the commissioner and the courts of this state shall be guided by interpretations given by the Federal Trade Commission and the federal courts to Section 5 (a) (1) of the Federal Trade Commission Act (15 U.S.C. 45 (a) (1)), as from time to time amended.

"(c) The commissioner may, in accordance with chapter 54, establish by regulation acts, practices or methods which shall be deemed to be unfair or deceptive in violation of subsection (a) of this section. Such regulations shall not be inconsistent with the rules, regulations and decisions of the federal trade commission and the federal courts in interpreting the provisions of the Federal Trade Commission Act.

"(d) It is the intention of the legislature that this chapter be remedial and be so construed."

that took place following the presentation of the plaintiff's case, the plaintiff's attorney spent much of her time unsuccessfully attempting to convince the court that it was "per se deceptive" for the defendant to misrepresent, even unknowingly, the odometer mileage on the vehicle it sold to the plaintiff. The trial court responded to her first such assertion by stating "[t]hat misrepresentation has to be a wilful, intentional, deliberate act," and did not retreat from that position afterward.

At common law, a cause of action for innocent misrepresentation sounded in warranty. *Hinchcliffe* v. *American Motors Corp.*, 184 Conn. 607, 616, 440 A.2d 810 (1981). CUTPA proscribes "a broader range of conduct than did the common-law action for misrepresentation [and a] CUTPA plaintiff need not prove reliance or that the representation became part of the basis of the bargain." Id., 617. *Web Press Services Corp.* v. *New London Motors, Inc.*, 203 Conn. 342, 363, 525 A.2d 57 (1987), relied on *Hinchcliffe* and the federal district court's decision in *Bailey Employment System, Inc.* v. *Hahn,* 545 F. Sup. 62, 67 (D. Conn. 1982), aff'd, 723 F.2d 895 (2d Cir. 1983), in holding "that knowledge of falsity, either constructive or actual, need not be proven to establish a violation of CUTPA." This holding has been reiterated in subsequent cases. See, e.g., *Cheshire Mortgage Service, Inc.* v. *Montes,* 223 Conn. 80, 106, 612 A.2d 1130 (1992); *Eamiello* v. *Liberty Mobile Home Sales, Inc.*, 208 Conn. 620, 653, 546 A.2d 805 (1988). It is not a prerequisite of a CUTPA violation to prove that a car dealer intended to deceive when an odometer reading is not accurate.[5]

---

[5] We also note that § 42-110b-28 (b) (16) of the Regulations of Connecticut State Agencies provides that "[i]t shall be an unfair or deceptive act or practice for a new car dealer or used car dealer to misrepresent in any advertisement the mileage of any motor vehicle." This regulation was

In construing General Statutes § 42-110b, we look not only to precedent set by the courts of Connecticut, but also to the interpretations given by the federal courts and the Federal Trade Commission (commission) to § 5 (a) (1) of the Federal Trade Commission Act. General Statutes § 42-110b (b). In *Federal Trade Commission* v. *Sperry & Hutchinson Co.,* 405 U.S. 233, 92 S. Ct. 898, 31 L. Ed. 2d 170 (1972), the United States Supreme Court construed § 5 of the Federal Trade Commission Act and cited three factors the commission "considers in determining whether a practice that is neither in violation of the antitrust laws nor deceptive is nonetheless unfair: '(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen).' Statement of Basis and Purpose of Trade Regulation Rule 408, Unfair or Deceptive Advertising and Labeling of Cigarettes in Relation to the Health Hazards of Smoking. 29 Fed. Reg. 8355 (1964)." Id., 244–45 n.5.

These three factors, known as the "cigarette rule," have been adopted by the courts of this state as criteria in determining whether a practice violates CUTPA. *Cheshire Mortgage Service, Inc.* v. *Montes,* supra, 105–106; *Web Press Services Corp.* v. *New London*

promulgated in accordance with General Statutes § 42-110b (c), which empowers the state commissioner of consumer protection to establish unfair or deceptive acts in violation of General Statutes § 42-110b (a). Additionally, General Statutes § 14-106b makes it a class A misdemeanor to tamper with the reading on an odometer. The existence of such statutes and regulations indicates that there is an identifiable public policy against selling motor vehicles with false mileage readings.

*Motors, Inc.,* supra, 355; *Sportsmen's Boating Corp.* v. *Hensley,* 192 Conn. 747, 756, 474 A.2d 780 (1984). A prospective plaintiff need not satisfy all three of the criteria; "[a] practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Cheshire Mortgage Service, Inc.* v. *Montes,* supra, 106, quoting Statement of Basis and Purpose, Disclosure Requirements and Prohibitions Concerning Franchising and Business Opportunity Ventures, 43 Fed. Reg. 59,614, 59,635 (1978). "Thus, a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy." (Citations omitted.) *Web Press Services Corp.* v. *New London Motors, Inc.,* supra.

The defendant's attorney argued in support of its motion for a directed verdict that the "substantial injury" prong of the cigarette rule had not been satisfied by the plaintiff. " '[T]he federal trade commission has stated: "The independent nature of the consumer injury criterion does not mean that every consumer injury is legally 'unfair,' however. To justify a finding of unfairness the injury must satisfy three tests. It must be substantial; it must not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and it must be an injury that consumers themselves could not reasonably have avoided." Letter from Federal Trade Commission to Senators [Gerald] Ford and [John] Danforth (Dec. 17, 1980) (reprinted in Averitt, "The Meaning of 'Unfair Acts or Practices' in § 5 of the Federal Trade Commission Act," 70 Geo. L.J. 225, 291 [1981]).' . . . *McLaughlin Ford, Inc.* v. *Ford Motor Co.,* [192 Conn. 558, 569–70, 473 A.2d 1185 (1984)]." *A-G Foods, Inc.* v. *Pepperidge Farm, Inc.,* 216 Conn. 200, 216, 579 A.2d 69 (1990). All three factors of the cigarette rule need not be satisfied to establish an unfair trade practice;

*Cheshire Mortgage Service, Inc.* v. *Montes,* supra, 106; *McLaughlin Ford, Inc.* v. *Ford Motor Co.,* supra, 569 n.15; it has been suggested, however, that unjustified consumer injury is the most important of the three factors, and that it must be substantial to justify regulation of a practice. *A-G Foods, Inc.* v. *Pepperidge Farm, Inc.,* supra, 216–17; *Atlantic Richfield Co.* v. *Canaan Oil Co.,* 202 Conn. 234, 242–43, 520 A.2d 1008 (1987); see also *Web Press Services Corp.* v. *New London Motors, Inc.,* 205 Conn. 479, 483-84, 533 A.2d 1211 (1987).

Rather than requiring a showing of "substantial injury" to a plaintiff, General Statutes § 42-110g (a) provides that "[a]ny person who suffers *any ascertainable loss* of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action . . . to recover actual damages. Proof of public interest or public injury shall not be required . . . . The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper." (Emphasis added.) In *Hinchcliffe* v. *American Motors Corp.,* 184 Conn. 607, 619, 440 A.2d 810 (1981), the Supreme Court determined that the plaintiffs had "suffered an ascertainable loss when they produced evidence fairly suggesting that, as a result of an unfair or deceptive trade practice, they received something different from that for which they had bargained." The *Hinchcliffe* court set aside the trial court's entry of a directed verdict for the defendant, stating that the amount of actual damages that the plaintiff might ultimately recover was not a concern at that stage of the trial. That reasoning is applicable to this case as well.

"[T]he burden of proving damages is on the party claiming them." *Gargano* v. *Heyman,* 203 Conn. 616, 620, 525 A.2d 1343 (1987); *Conaway* v. *Prestia,* 191

Conn. 484, 493–94, 464 A.2d 847 (1983). "It is then the province of the *trier of fact* to weigh the evidence presented and to determine the credibility and effect to be given the evidence." (Emphasis added.) *Gargano* v. *Heyman,* supra. Here, the plaintiff offered evidence that the defendant's misrepresentation of the odometer mileage had led her to purchase a car that cost her $4222.25 out-of-pocket, $2788.20 of which she had personally been refunded by the defendant. She also had spent money on repair costs, taxes, insurance, and the maintenance of a substitute vehicle, as well as lost wages. CUTPA allows the recovery of actual damages; General Statutes § 42-110g (a); which would include at least the cost of repairs and alternative transportation, as well as the balance of the sum the plaintiff spent out-of-pocket on car payments. *Altberg* v. *Paul Kovacs Tire Shop, Inc.,* 31 Conn. App. 634, 641, 626 A.2d 804 (1993). Even if the defendant had been due an offset for the plaintiff's use of the car, the plaintiff would nevertheless have succeeded in alleging substantial damages. Of more importance, however, is that it was for the jury, not the court, to decide what the actual damages were.

Therefore, it was plain error for the trial court to grant the defendant's motion for a directed verdict on the plaintiff's CUTPA claim.

### B

We next address the plaintiff's claim that the defendant breached its warranty to the plaintiff. The court directed a verdict on this count because the plaintiff had not presented a prima facie case "under the entirety of its complaint."

In the first count of her complaint, the plaintiff alleged that the defendant "breached its warranty as to the mileage of the vehicle," and listed the same damages as in the second count. It is undisputed that the

limited warranty issued by the defendant to the plaintiff listed the odometer reading as 38,114 miles, and that the actual mileage on the vehicle was 88,114 at that time. No suggestion was made that the plaintiff's claim was outside the scope of the warranty. The court directed a verdict for the defendant on this count because it was persuaded that no jury could find that the plaintiff had suffered any damages, and that there is no cause of action for a breach of warranty due to an innocent misrepresentation.

"In Connecticut, strict liability for innocent misrepresentation in the sale of goods is well established." *Johnson* v. *Healy*, 176 Conn. 97, 101, 405 A.2d 54 (1978). "In contracts for the sale of tangible chattels, express warranty encompasses material representations which are false, without regard to the state of mind or the due care of the person making the representation." Id., 100. The Uniform Commercial Code, General Statutes § 42a-1-101 et seq., has displaced many of the common-law warranty actions involving transactions in goods. Innocent misrepresentations, however, are still actionable. See General Statutes §§ 42a-2-313 through 42a-2-318. Additionally, General Statutes § 42-225 (a) provides that "[n]o dealer may make any false, misleading or deceptive statements about the condition or history of any used motor vehicle offered for sale." A cause of action for breach of warranty was available to the plaintiff.

Although the damages available under CUTPA are more extensive than those available under a warranty action, the plaintiff introduced evidence that would have entitled her to some recovery, if it was believed by the jury. "The general rule for measurement of damages upon breach of warranty is to award the prevailing party such compensation as will place him in the same position as he would have enjoyed had the property been as warranted." Id., 105. General Statutes

§§ 42a-2-711 through 42a-2-719 also permit the buyer to recover incidental and consequential damages. General Statutes § 42a-2-715. Again, it was the province of the jury to decide whether to believe the plaintiff's evidence, and to determine if the defendant had an offsetting claim.

We hold that it was plain error for the trial court to grant the defendant's motion for a directed verdict as to both the plaintiff's breach of warranty claim and the plaintiff's CUTPA claim.

### III

The plaintiff also appeals from the trial court's denial of her motion for summary judgment on the defendant's special defense of accord and satisfaction. The denial of a motion for summary judgment is not ordinarily appealable because it is not a final judgment. Practice Book § 4000; *Denby* v. *Voloshin Cadillac, Inc.,* 3 Conn. App. 181, 181–82 n.3, 485 A.2d 1360, cert. dismissed, 196 Conn. 802, 491 A.2d 1105 (1985). Where the case has not gone to trial, however, summary judgments are appealable because the rationale that "a decision based on more evidence should preclude a decision based on less evidence" is not applicable in that situation. *Aetna Casualty & Surety Co.* v. *Jones,* 220 Conn. 285, 295 n.12, 596 A.2d 414 (1991); see *Gurliacci* v. *Mayer,* 218 Conn. 531, 541 n.7, 590 A.2d 914 (1991). A plaintiff may appeal from the denial of its motion for summary judgment where the trial court had granted summary judgment for the defendant and the case had not gone to trial. *Aetna Casualty & Surety Co.* v. *Jones,* supra.

The defendant had the burden of proving its special defense of accord and satisfaction. Because the court directed a verdict at the close of the plaintiff's case, no evidence was presented in support of that defense. We need not review the denial of the plaintiff's motion

for summary judgment, however, because the rationale of *Aetna Casualty & Surety Co.* v. *Jones,* supra, is not applicable here. The plaintiff is entitled to a new trial, which will give the defendant an opportunity to reassert its special defense and to introduce evidence supporting it.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.