[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED JUNE 26, 1996
This case involves a dispute between a contractor and a homeowner regarding renovations and alterations to a single-family residence located at 13 Hitchcock Road in Westport. The plaintiff, Wright Brothers Builders, Inc. (Wright Brothers), filed its revised five-count complaint, dated February 23, 1995. In the first count, directed at the defendant Sandra O. Dowling, the record owner of the subject premises, the plaintiff alleges that it is a licensed home improvement contractor; that it had entered into a written contract with the defendants, Joseph A. Dowling and his wife, Sandra O. Dowling, which complied with General Statutes § 42-134a et seq., the Home Solicitation Sales Act (HSSA); that it rendered services and furnished materials in connection with the remodeling of and alterations to the Dowlings' home; that it completed work on the subject premises on October 19, 1991, and filed a mechanic's lien on November 29, 1993, in the Westport Land Records; and that the balance due and unpaid under the contract is $141,275. In the second count of its complaint, which is against both defendants, the plaintiff alleges that the defendants agreed in writing to pay $141,275, and that this sum, plus interest at 12% per year, is due and owing. In the third count, also against both defendants, the plaintiff alleges that the defendants were unjustly enriched by the plaintiffs rendering of services and furnishing of material at the subject premises. In the fourth count, which is against Joseph Dowling, the plaintiff contends CT Page 5021 that said defendant made false representations regarding the scope and cost of the work at the subject premises, and that the plaintiff relied on said defendant's promises to pay for the cost of the work. In the fifth count, the plaintiff claims that the defendant Joseph A. Dowling interfered with the plaintiffs "financial expectancies." The plaintiff claimed a foreclosure of its mechanic's lien, a deficiency judgment and monetary and punitive damages.
The defendants filed a revised answer, special defenses and a counterclaim dated April 27, 1994, amended on March 2, 1995, in order to reply to the fourth and fifth counts of the plaintiffs revised complaint. The defendants deny the material allegations of the complaint and deny that they owe the plaintiff any money. In their eight special defenses, the defendants contend that they paid the plaintiff money not credited to their account; that the contract between the parties fails to comply with the provisions of General Statutes § 20-429(a), the Home Improvement Act (HIA), pertaining to cancellation rights, starting and completion dates, and registration of the contractor, respectively; that the original contract dated January 11, 1993, was rescinded and replaced by a written agreement dated September 20, 1993, which also failed to comply with a number of the requirements of the HIA; that the revised contract of September 20, 1993 was not signed by Sandra O. Dowling, the record owner of the subject premises; that the plaintiff intentionally misrepresented the total cost of the project; that the first contract of January 11, 1993, is not the contract on which the parties relied; that the amount of the mechanic's lien is excessive; and that the plaintiff failed to perform its obligations under the contract.
The defendants also filed a counterclaim, which contains eight counts. In the first count, the defendants allege that the contract of January 11, 1993, is based on a "cost-plus" format of $875,000, and $127,000 compensation for the plaintiff; that the new contract of September 20, 1993, which was signed by the plaintiff and Mr. Dowling, was based on a "fixed-price" in which the plaintiff agreed to complete the project for a total cost of $835,000; that the defendants had paid $75,000 to the plaintiff on the signing of the new agreement, and two months thereafter tendered $67,475, in accordance with the amended contract, which money the plaintiff refused to accept, thus breaching the contract. In the second count, the defendants contend that by refusing to accept the offer of $67,475, the plaintiff breached the contract of September 20, 1993. In the third count of the CT Page 5022 counterclaim, the defendants claim that the sum of $141,275, referred to in the mechanic's lien as the total due to the plaintiff, was excessive and as a result title to the defendants' real property had been "slandered." In the fourth count, the defendants claim that the filing of an incorrect mechanic's lien constitutes a violation of General Statutes § 42-110b et seq., the Connecticut Unfair Trade Practices Act (CUTPA). In the fifth count, the defendants allege that the plaintiff falsely represented the cost of the project. In the sixth count, the defendants allege that the plaintiffs false representations constituted unfair trade practices in violation of CUTPA. In the seventh count, the defendants contend that the conduct of plaintiff caused Joseph A. Dowling to suffer "extreme emotional disturbance, distress and bodily injury." In the eighth count, the defendants claim that the plaintiff acted with malicious intent to cause emotional and physical injury to Joseph A. Dowling. In their prayers for relief, the defendants claim damages, "special" damages, "treble" damages, attorneys fees, and a declaratory judgment that the contracts of January 11, 1993, and September 20, 1993, are both void and unenforceable.
The plaintiff filed an "avoidance" to the defendants' second, third and fourth special defenses in which it contends that the defendants are estopped from claiming the benefit of the Home Solicitation Sales Act by reason of "their own bad faith."
This case was referred to Attorney Robert P. Dolian, an attorney trial referee, in accordance with General Statutes §52-434 (a) and Practice Book § 428 et seq. The referee conducted a trial and then filed his report containing the following findings of fact: (1) that the plaintiff is a licensed home improvement contractor; (2) that the contract of January 11, 1993 for remodeling and renovations to 13 Hitchcock Road, Westport, was on a cost-plus basis with 10% for overhead and 7% for profit; (3) that although Mrs. Dowling is the record owner, Mr. Dowling represented both himself and his wife with respect to this project; (4) that although originally the contract price was $528,360, the cost of the project was increased because of various changes and extras to a budgeted cost of $875,579, which increase was made known to the defendants by the plaintiff a periodic basis; (5) that on September 20, 1993, the plaintiff and Mr. Dowling signed an "amendment" to the original contract in which the plaintiff agreed to finish the project for a total reduced and final price of $835,579, a reduction of price of $40,000, with a payment of $75,000 to the plaintiff on the CT Page 5023 signing of this amended agreement, and $67,474 within sixty days after receiving a certificate of occupancy, and that there would not be any increase in the plans or scope of the project; (6) that the defendants paid the $75,000 and the house was completed in a proper, timely and workmanlike manner; (7) that the plaintiff argues that $141,275 is due, $67,474 as referred to by the defendants based on the September 20, 1993 agreement, and the balance because of changes or extras; (8) that the January 11, 1993 agreement contains both a starting and a completion date; (9) that this contract contained a notice regarding the defendants' right to cancel and the time within which to do so, but the cancellation provision in the contract did not comply precisely with the HIA, General Statutes § 42-135 (a)(2) and (3), which require that the homeowner be furnished a "completed form in duplicate" of the notice of cancellation, and that the "date of the transaction, and the date, not earlier than the third business day following the date of the transaction, by which the buyer may give notice of cancellation," respectively; (10) that the defendants agreed that they never thought of or contemplated canceling the contract with the plaintiff; (11) that the defendants exhibited "bad faith" in this transaction because: (a) they are seeking affirmative relief at the same time they contended that the contract is unenforceable because of HIA violations; (b) they seek to avoid payment for work that they ordered and which was performed in a timely and proper workmanlike manner; (c) they never contemplated canceling the agreement, but now seek to avoid payment because of an allegedly deficient cancellation provision; and (d) Mr. Dowling took advantage of the plaintiffs cash problems by forcing a reduction in the contract price as reflected in the amended agreement; and (12) that after the September 20, 1993 agreement was executed, the defendants expanded the scope of the project by $33,801, despite the provision in the agreement to the contrary.
The attorney trial referee concluded on the basis of the above findings of fact that: (1) the requirements of the HIA were complied with, and the defendants' contentions regarding the cancellation clause were "highly technical"; (2) even if HIA's cancellation provisions were violated, the plaintiff was entitled to recover because of the defendants' bad faith; (3) the plaintiff is bound by the September 20, 1993 contract despite the lack of Mrs. Dowling's signature because it sought and accepted $75,000 based on that agreement, despite knowing that the agreement did not contain Mrs. Dowling's signature; (4) the amended agreement is binding on the plaintiff because it was CT Page 5024 based on consideration in that this agreement resolved a dispute between the parties; (5) the defendants are liable for additional work that they requested after the September 20, 1993 agreement was executed; and (6) the defendants briefed only their claim that the contract violated the HIA, and therefore abandoned their other contentions in the counterclaim. The referee concluded his report by recommending that judgment enter for the plaintiff in the amount of $67,474 in accordance with the September 20, 1993 contract, plus $33,801 for extras ordered by the defendants, for a total recovery by the plaintiff of $101,275. As to the counterclaim, the referee recommended that judgment should enter against the defendants and in favor of the plaintiff because the referee determined that the HIA had not been violated, or if it had, the defendants exhibited bad faith.
Both the plaintiff and the defendant, pursuant to Practice Book § 438, moved to correct the report. In the case of the plaintiff, it sought corrections to reflect that: (1) the defendants waived any rights they may have had to claim a violation of the cancellation provisions of the HIA, and are estopped from doing so because the contract does not contain a notice of cancellation in duplicate and the dates thereof were not filled in; (2) the defendants are estopped from making this claim because they knew about their right of cancellation, and agreed that they never intended to cancel the agreement; (3) the failure of Sandra O. Dowling to sign the amendment to the agreement rendered it unenforceable, since the original contract provided that it could not be amended except in a writing signed by the plaintiff and the "owner" of the property; (4) there was no "new" consideration for the September 20, 1993 contract, as the defendants already owed the plaintiff a balance on the original contract; (5) interest should be awarded as provided in the January 11, 1993 contract; and (6) attorneys fees should also be awarded pursuant to General Statutes § 52-249 (a) as the action brought by the plaintiff seeks the foreclosure of a mechanic's lien. In response to the motion to correct filed by the plaintiff, the attorney trial referee declined to make any changes in his report or recommendation that judgment enter for the plaintiff on the complaint in the amount indicated.
The defendants moved that the report be corrected to reflect that: (1) neither the original contract nor the amendment of September 20, 1993, satisfied the requirement of the HIA in General Statutes § 20-429 (a)(6) in that duplicate notices of cancellation forms were not provided, nor did the notice CT Page 5025 contain the date of the transaction and therefore the date by which the defendants as the purchasers could give notice of cancellation; (2) General Statutes § 20-429(a)(7) was violated in that the agreement did not contain a starting date of construction and a completion date; (3) the work performed by the plaintiff after September 20, 1993, the date of the amendment, was pursuant to the original contract, and did not represent an expansion of the scope of the project; and (4) the defendants only agreed that they owed the plaintiff $67,474, if their contention concerning the HIA was rejected by the referee. The referee denied the motion to correct filed by the defendants.
Both the plaintiff and the defendants filed exceptions to the referee's report pursuant to Practice Book § 439, and the required transcript of the evidence that was introduced at the trial before the attorney trial referee was filed.
The plaintiffs exceptions to the referee's report repeat the claims set forth in its motion to correct, and essentially relate to the ruling by the referee that the amendment to the contract dated September 20, 1993, was valid despite the absence of Mrs. Dowling's signature and despite the alleged absence of "new" consideration. The plaintiffs exceptions also include its request for interest and attorneys fees.
The defendants' exceptions also repeat the substance of their motion to correct in that they claim that the HIA was violated because of inadequacies in the notice of cancellation, and also that the work performed by the plaintiff after the agreement of September 20, 1993 did not represent an expansion of the scope of the project in the amount of $33,801, but rather only fulfilled the plaintiffs obligations under the original contract.
The defendant also filed objections to the acceptance of the referee's report in accordance with Practice Book § 440, but the plaintiff did not file any such objections. This means that the plaintiff has waived any right to claim that the referee's conclusions were not properly reached on the basis of the subordinate facts that were found, or that there were errors in rulings on the admission of evidence or in other rulings.Rostenberg-Doern Co. v. Weiner, 17 Conn. App. 294, 301,552 A.2d 827 (1989). In Rostenberg-Doern, where the plaintiff did not file objections to the referee's report, the court said the failure to "follow the appropriate procedural guidelines" resulted in it being "precluded from reviewing [plaintiff's] claim." Id.
CT Page 5026
The objections to the report filed by the defendants relate to the determination by the referee that the HIA was not violated, or if it was, then the defendants' bad faith permit the plaintiff to recover nonetheless. The defendants also repeat their contention that the referee erred in ruling that they ordered $33,801 of extras which expanded the scope of the project.
As to this court's scope of review of an attorney trial referee's report regarding the facts of a given case, the Supreme Court has stated that: (1) the trial court may not "retry the case": and (2) a court may not find additional facts or reject facts found by the referee unless, in the words of Practice Book § 439, "a material fact has been found without evidence or the [referee] has failed to find an admitted or undisputed fact, or has found a fact in such doubtful language that its real meaning does not appear." Dills v. Enfield, 210 Conn. 705, 714,557 A.2d 517 (1989). Furthermore, a trial court may not engage in "fact-finding contrary to the report of the referee." Id., 716; see also Practice Book § 440.
Therefore, the first issue for the court reviewing an attorney trial referee's report would normally be to determine whether there is support in the record for the referee's factual findings that at best there were minor technical errors in the cancellation provisions of the contract, and alternatively that the defendants had exhibited bad faith which prevents the defendants from repudiating the contract. In this case, however, there is no dispute about the facts as such. Rather, the issue is whether the contract language regarding the right to cancel permits the plaintiff to recover under the contract, and whether the defendants' conduct as outlined in the referee's report constitutes bad faith.
The resolution of these issues is the second task of the reviewing court, which must determine whether "the conclusions reached were in accordance with the applicable law." Thermoglaze,Inc. v. Morningside Gardens, Co., 23 Conn. App. 741, 746,583 A.2d 1331, cert. denied, 217 Conn. 811, 587 A.2d 153 (1991). See also Practice Book § 440: Bernard v. Gershman, supra, 18 Conn. App. 656.
The applicable law regarding the right to rescind a contract when there is a violation of the HIA was recently reiterated by the Chief Justice in Fruin v. Colonnade One at Old Greenwich Ltd.CT Page 5027Partnership, 237 Conn. 123, 134 (1996): "under the . . . HIA . . . a homeowner, in the absence of proof of his or her bad faith, may unilaterally rescind a home improvement contract that fails to comply with the requirements set forth in that act . . . HIA, however, expressly voids a contract that does not comply with its requirements, and . . . contains no language expressly limiting the right to rescind."
The attorney trial referee agreed that the contract in this case did not comply with the HIA because a duplicate copy of the notice of cancellation was not furnished to the defendants, and the date of the transaction was not noted.[1] These violations were described by the referee as "highly technical" but, as expressed in Fruin, supra, 237 Conn. 135, there is no language in the act that limits a homeowner's "unrestricted rescission right" if there has been a violation of the act. In Rizzo Pool Co. v.Del Grosso, 232 Conn. 666, 680, 657 A.2d 1087 (1995), the absence of a commencement date or a completion date permitted the purchaser to repudiate the contract. "Because the requirements of the HIA are mandatory and must be strictly construed, the absence of these dates constitutes a violation of the HIA that renders the contract unenforceable." Id.
The next issue is the applicability of the "bad faith" exception of Habetz v. Condon, 224 Conn. 231, 236 40,618 A.2d 506 (1992). The "bad faith" exception requires a plaintiff to establish "that the [defendant's invocation of the HIA as a basis for this] repudiation of the contract was in bad faith." RizzoPool Co. v. Del Grosso, supra, 232 Conn. 680. "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. Bad faith means more than mere negligence: it involves a dishonest purpose." (Citations omitted: internal quotation marks omitted.) Habetz v. Condon, supra,224 Conn. 237; see also Rizzo Pool Co. v. Del Grosso, id.
Under number 11 on page 8 of the memorandum of decision in this case, the court previously summarized the four examples of bad faith on the part of the defendants that were found by the referee. These illustrations found by the referee make it evident that the plaintiff cannot recover on the bad faith exception because it is limited to "instances of bad faith relating to the formation of, or inducement to, enter into a home improvement CT Page 5028 contract" and even possibly an "unwarranted" or an "improper termination or repudiation of the agreement." Dinnis v. Roberts,35 Conn. App. 253, 257, 644 A.2d 971 (1994). The alleged bad faith in this case falls far short of the proof required to invoke this exception, and thus the referee's conclusion that the plaintiff proved bad faith on the part of the defendants is rejected. "A referee's determinations of law in his or her report are not binding on the court . . . the trial court has the power to render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney trial referee . . . [t]he trial court [has] the inherent authority . . . to render whatever judgment was appropriate in light of the facts found by the attorney trial referee." (Citations omitted; internal quotation marks omitted.) Dills v. Enfield, supra, 210 Conn. 713: see also State Bank of Westchester v. New Dimension Homes ofConnecticut, Inc., 38 Conn. App. 491, 497, 661 A.2d 119 (1995) (stating "[a]ny legal conclusions reached by an attorney trial referee have no conclusive effect").
Moreover, the plaintiff is not entitled to recover under its claim of unjust enrichment because of the violation of the HIA.Wadia Enterprises, Inc. v. Hirschfeld, 224 Conn. 240, 251,618 A.2d 506 (1992).[2]
Accordingly, as to the plaintiffs complaint, judgment is entered in favor of the defendants. The counterclaim filed by the defendants which, among other things, claims that the plaintiff violated CUTPA, presents the issue of damages arising from the violation of the HIA by the plaintiff, and the resulting per se violation of CUTPA in accordance with General Statutes §20-427(c). As pointed out in Woronecki v. Trappe, 228 Conn. 574,579, 637 A.2d 783 (1994), "[b]ecause the trial court found that the plaintiff's actions had violated the HIA, it was thus bound to render judgment for the defendant with respect to the CUTPA count of her complaint."
Prishwalko v. Bob Thomas Ford, Inc., 33 Conn. App. 575, 586,636 A.2d 1383 (1994), discusses General Statutes § 42-110g(a), which provides that a person who "suffers any ascertainable loss of money or property . . . as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action . . . to recover actual damages." The Appellate Court stated that this referred to a plaintiff producing evidence "fairly suggesting that, as a result of an unfair or deceptive trade practice, they received something CT Page 5029 different from that for which they had bargained." (Citation omitted.) Id. In this case, it is clear that the defendants bargained for and received renovations and alterations to their home, which was exactly what they were seeking. There is no indication in the record that they entered into this contract with the plaintiff because the latter engaged in any deceptive practice or act. Moreover, the referee found as a fact that the plaintiff satisfactorily performed the services it had contracted to perform. Thus, the defendants not only did not suffer any loss, they actually received a windfall as the referee found that they had received approximately $100,000 of construction, for which the defendants are absolved from paying because of the violation of the HIA. "The ascertainable loss requirement is a threshold barrier which limits the class of persons who may bring a CUTPA action." Hinchliffe v. American Motors Corporation,184 Conn. 607, 614, 440 A.2d 810 (1981). The defendants failed to show that they were entitled to cross this barrier because they did not prove that they had "purchased an item partially as a result of an unfair or deceptive practice or act and that the item is different from that for which he bargained." Id., 614-15. The concurring opinion in Rizzo Pool Co. v. Del Grosso, supra,232 Conn. 689-90, points out that in addition to "actual" damages, one who successfully sues under CUTPA may recover "nominal" damages, but only if "a person has been deprived of the item for which he had bargained." In this case, as noted previously, the defendants were not deprived of the construction work to their home, but rather received precisely what they bargained for and hence are not entitled to nominal damages.
Thus, judgment is rendered in favor of the defendants on their counterclaim but no damages, nominal or actual, are awarded. Statutory costs shall not be taxed.
LEWIS, J.