[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION TO SET ASIDE THE VERDICT AND FOR REMITTITUR
This action arose out of a publicly bid contract for the installation of a mobile home park for use of residents of the defendant Town of Berlin. The plaintiff was the low bidder and was awarded the contract. The plaintiff performed the contract and brought this action in five counts, alleging claims for: A breach of an express contract for nonpayment of extra work performed (first count); quantum meruit/unjust enrichment (second count); defamation against two town employees (third and fourth counts); and, violation of CUTPA (fifth count). The only count which went to the jury was for breach of contract, and the jury returned a verdict for the plaintiff.
The defendant now moves to set aside the verdict and for remittitur, claiming: that the jury's verdict was not supported by the evidence, errors in the admission of evidence and in the court's charge, and that the court improperly denied the defendant's motion to amend its answer to permit the defendant to CT Page 9479 specifically deny the plaintiff s corporate capacity.
For the reasons that follow, the defendant's motion to set aside the verdict is denied; the defendant's motion for remittitur is granted.
"A motion to set aside a verdict serves at least four useful functions: (1) it allows the trial court, in the less hectic atmosphere of a posttrial proceeding, to reconsider its rulings and, if they are determined to have been erroneous as well as harmful, to grant a new trial without the necessity of an appeal; (2) it provides an opportunity for the court to explain and to justify the challenged rulings in a written memorandum far more effectively and clearly than is possible at trial; (3) after a verdict is rendered and before an appeal is taken it provides the only occasion for counsel to appear in court and to present arguments in support of their positions, which are ordinarily formulated much more clearly and persuasively than at trial; and (4) it induces counsel for the parties to reevaluate the strength of their positions in the light of a jury verdict and thus may lead to a settlement of the litigation." Prishwalko v. Bob ThomasFord. Inc., 33 Conn. App. 575, 579-80. 636 A.2d 1383 (1994).
Motions to set aside verdicts are for the use of the trial court to reconsider actions made during the heat of the trial, in order to correct them if they are deemed incorrect in hindsight.
"Litigants have a constitutional right to have factual issues resolved by the jury. . . . This right is one obviously immovable limitation on the legal discretion of the court to set aside a verdict, since the constitutional right of trial by jury includes the right to have issues of fact as to which there is room for a reasonable difference of opinion among fairminded [persons] passed upon by the jury and not by the court. . . ." Mather v.Griffin Hospital, 207 Conn. 125, 138-39, 540 A.2d 666 (1988).
"[The trial court] should not set aside a verdict where it is apparent that there was some evidence upon which the jury might reasonably reach their conclusion, and should not refuse to set it aside where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles, or as to justify the suspicion that they or some of them were influenced by prejudice, corruption or partiality. . . . Moreover, [I]t is not for us . . . to say what portions of the evidence should or should not CT Page 9480 have been believed by the jury in this case, but we are bound rather to decide whether the verdict was sound upon any reasonable and fair interpretation of the evidence." (Citations omitted; internal quotation marks omitted.) Champagne v.Raybestos-Manhattan. Inc., 212 Conn. 509, 555, 562 A.2d 1100
(1989). "In considering a motion to set aside the verdict, the court must determine whether the evidence, viewed in the light most favorable to the prevailing party, reasonably supports the jury's verdict." Mather v. Griffin Hospital, supra,207 Conn. 139.
 I. CLAIMS RESPECTING IMPROPER ADMISSION OF EVIDENCE AND DENIAL OF DEFENDANT'S MOTION TO AMEND ANSWER
The defendant makes a plethora of claims respecting the court's admission of evidence. The first grouping of claims relates to the plaintiffs capacity to bring and maintain this suit. The parties agreed on the record that the plaintiff corporation had been dissolved by forfeiture at the time the contract was entered into, at the time the suit was brought and to the time of the verdict, and that it has not been reinstated. The court fully set forth on the record its reasons for denying the defendant's motion in limine to preclude the evidence it complains about and for denying its motion to amend the answer to enable it to attack the plaintiff s standing and capacity to sue. I see no reason to further expand upon the basis of the court's rulings.
The second grouping of evidentiary claims relates to the admission of testimony by Christopher Brewer, Terrence Brewer and Randall Judd. Again, these rulings were fairly and adequately explained on the record and the court is not persuaded that they were erroneous, or if erroneous, that they were harmful.
The third grouping of evidentiary claims relates to the admission of certain exhibits, one of which contained a summary of plaintiffs claims, and the others, according to the defendant, contained "prejudicial information in the nature of unsubstantiated claims by the plaintiff as well as a good deal of hyperbole." A large number of letters and other correspondence which ensued between the parties during the construction work was admitted into evidence. Many of the letters challenged by the defendant either provoked certain of the defendant's correspondence or were in response to it, and helped the jury to better understand the disputes between the parties in a fuller CT Page 9481 context. Moreover, the court found that the probative value of the admitted correspondence outweighed any prejudicial effect upon the defendant.
The summary of the plaintiff's claims (Exhibit No. 106), although concededly prepared in anticipation of litigation, summarized documents already in evidence, and served to explain and clarify the testimony of witnesses, and tie together and organize all of the plaintiff's claims, and in the court's opinion, was helpful to the jury in its determination of the issues.
 II. CLAIMS OF ERROR IN THE CHARGE TO THE JURY
The defendant asserts that the court erred in two portions of its charge. The first, relating to when discrepancies in the work must be submitted to the Town engineer, the second, relating to the court's failure to charge that the performance of extra work without prior notice to the engineer `was at the plaintiffs own risk'.
In this case, it is significant to note that the Town engineer committed a breach of the contract at the end of the very first month after the commencement of plaintiff's performance, by failing to prepare and issue an estimate of the work then performed and the amount then due and payable to the plaintiff under the specific terms of the contract. Although the defendant argues that the breach was, at most technical, it certainly had the effect of excusing punctilious performance by the plaintiff of ministerial requirements of the contract. On the evidence presented, the jury could have reasonably found that discrepancies were submitted to the Town engineer, and that he was made aware of the extra work and materials provided and supplied by the plaintiff, as the Town engineer and the town's inspectors were on the job site on a regular basis. In any event, it is well settled " . . . that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . The test is whether the charge as a whole fairly presented the case so that no injustice was done. (Citations omitted.) VanSteensburg v. Lawrence Memorial Hospital, 194 Conn. 500, 507,481 A.2d 750 (1984). A charge need not be exhaustive, perfect or technically accurate, and will ordinarily be sustained if correct in law, adapted to the issues and sufficient for the guidance of the jury. The defendant's claims with respect to the deficiencies CT Page 9482 in the charge to the jury are unpersuasive.
 III. MOTION FOR REMITTITUR
The jury returned a verdict in favor of the plaintiff and awarded damages as follows:
 A. Retainage $ 6,317.11 B. Extra Site Fill $ 22,990.00 C. Extra Work $ 47,131.00
The defendant asserts that the court should remit the $22,990 site fill award in its entirety, and further asserts that the extra work award of $47,131 should be remitted in part.
The defendant basically argues in support of its position that the plaintiff did not present sufficient evidence to demonstrate that it was entitled to payment for the extra site fill in light of the contract, and the bid provisions which were incorporated therein. The plaintiff s employees testified to the inadequacy of the site's subsurface, which was removed, and the corresponding need and reasonableness of bringing in the additional site fill to replace the subsoil in order to adequately grade the site for the roadway and mobile home pads. This extra amount of fill was substantial, and could not go unnoticed by the defendant's inspectors and the Town engineer. Moreover, the defendant was given written notice of the extra fill claim in the very first estimate of work and request for payment which was prepared by the plaintiff and furnished to the Town engineer early in the job. The defendant points to the report of the Town's consulting engineer which states that less than the original estimate of fill was used, when comparing the original site grade with the `revised finish grade'. However, the consultant's report was based only on design calculations, and not on `as built' measurements. Neither the consulting engineer's report, nor the Town's engineer, Seelye, responded to the basis of the plaintiff's claim. The jury, as the sole judges of the facts, the credibility of witnesses, and the weight to be given the evidence, clearly credited the plaintiff's evidence on this point. The court cannot say that the jury acted unreasonably in doing so. Therefore, this claim of the defendant is not persuasive and fails.
The defendant next claims that the award of $47,131.00 for extra work should be remitted, in part. I agree with the CT Page 9483 defendant that the retainage amount of $6,317.11 was already included in Part A of the verdict, and cannot stand. Likewise, the sum of $2,685.00, which undisputedly was paid by the town for the utility trenching work, was not deducted from Schedule C (the summary of the plaintiff's various extra work claims) and therefore cannot stand.
Morever, there are a number of other items which were included in the jury award of $47,131, for which there was no evidence to reasonably support the conclusion that they were not within the scope of the contract and were reasonably required and necessary for the substantial performance of the contract, or were provided as a result of design or work changes ordered by the Town engineer.
The major category unsupported by the evidence was the "miscellaneous unilateral deductions", so described by the plaintiff, of $12,288.50. A portion of these items were properly deducted by the Town engineer from the unit contract price because the work was either deleted from the contract, or performed by others. The amounts properly deducted were the mobile home anchors or `tie-downs' at $3,600; the survey work for $737.50; and, the plaintiff s own allowance of $1,600 for the water meter pits, rather than the $4,800 deducted by the Town engineer. The total of $5,937.50 for these items was properly deducted by the Town engineer in accord with the provisions of the contract. The plaintiff provided no evidence to the contrary which supported payment to it for work not performed by it, nor any contract language justifying such payment. Nor, did the plaintiff produce credible evidence of expenses reasonably incurred by it which resulted from the deletions. Therefore, as the jury could not fairly or reasonably find that the Town engineer unjustifiably deducted these items from the contract price, even when considering the evidence in a light most favorable to the plaintiff, that portion of the award, the sum of $5,937.50, also cannot stand, as it is excessive as a matter of law.
In examining each of the plaintiff s claims for payment for extra work in the remainder of this category, I find sufficient evidence to support the jury's verdict except in one instance, the utility trenching. The provision of the contract applicable to extra work provides as follows:
 "C — CHANGES AND EXTRA WORK CT Page 9484
 (1) The [Town] engineer may, in writing, and without notice to surety, alter and change the line, grade, plan, form, position, dimensions or materials of the work herein contemplated or any part thereof in a manner not consistent with the general layout of said improvement, either before or after its commencement, or may order in writing any extra work which he may deem necessary therewith. If such alterations diminish the quantity of the work to be done, they shall not be made the basis of a claim for damages, or for anticipated profits on the work that may be dispensed with; if they increase the amount of work, such increase shall be paid for according to the quantity done and at the price established for such work under this contract; or in case there is no price established, it shall be paid for at a reasonable amount as determined by the Town of Berlin and the Contractor."
It also is important to note that the contract was divided into 21 items which were `unit priced'; that is each item had a separate price. The parties did not seriously dispute that if an item was deleted from the work, the Town would be relieved from payment for that item, unless the plaintiff had already provided some work, materials or incurred additional expense thereon, in which case the town would be required to pay for the work or materials supplied, or the additional expense on a unit price or reasonable cost basis, as applicable.
Accordingly, the contractual provisions relating to the payment for extra work, read in the context of the contract and bid provisions as a whole, require that for the plaintiff to recover for such extra work, it must not have been included in the original contract, or, was necessitated by either changes in the design or construction ordered by the Town engineer or discrepancies between the design and the final `as built' job, or was work already performed, prior to the proper issuance of a written change order, or delays occasioned thereby.
The plaintiff claimed a total of $5,493.78 due it for extra work relating to the utility trenching work. Although it was undisputed that some of the trenches were relocated, the trenches were, in the end, dug to design specifications. Aside from the additional labor required to place the conduit required by a change order, for which the plaintiff was paid, the plaintiff has not provided any evidence that the work done was not within the scope of the original contract, or that any of it was redone as a result of the change orders. Hence, that portion of the plaintiff's claim. $5,493.78, less the aforementioned uncredited CT Page 9485 payment of $2,685, for a net of $2,808.78, cannot stand, as it is excessive as a matter of law.
The court has carefully considered and reviewed the evidence, in a light most favorable to the plaintiff and finds that the balance of the award of $29,382.61[1] for the extra work was not excessive as a matter of law. "In ruling on a motion for a remittitur, the trial court [is] obliged to view the evidence in the light most favorable to the plaintiff in determining whether the verdict returned was reasonably supported thereby. . . . The only practical test to apply is whether the award falls somewhere within the unnecessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption." Eisenbach v.Downey, 45 Conn. App. 165, 184, 694 A.2d 1376 (1997).
There was sharply conflicting testimony and evidence with respect to the amount of extra work done, the timeliness of written change orders to the plaintiff, and the amount of work which I had to be redone, as a result of design or other changes ordered by the Town engineer. The jury, as the sole arbiters of fact and credibility obviously resolved these questions in favor of the plaintiff.
As there was sufficient evidence before the jury to justify the award of $29,382.61 for extra work, I am compelled to the conclusion that the jury was not mistaken, confused or otherwise improperly influenced on this question. As there is sufficient evidence to justify only $29,382.61, the motion for remittitur is therefore granted, and a remittitur is ordered in the amount of $17,748.39. See footnote 1, supra.
In the event the remittitur is accepted by the plaintiff, judgment may be entered for the plaintiff to recover the sum of $58,689.72, (the retainage award of $6,317.11 plus the site fill award of $22,990 plus the extra work award portion supported by the evidence of $29,382.61) plus accrued interest at the statutory rate, as awarded by the jury, on the retainage of $6,317.11 from September 1, 1994, and on the balance of said judgment from September 1, 1993, to the date of payment. In the event the remittitur is not accepted by the plaintiff within 20 days of the filing of this decision, a new trial is ordered on the claim for extra work and a partial judgment may enter for the plaintiff to recover the sum of $29,307.11 (the retainage plus CT Page 9486 the site fill), together with interest at the statutory rate from the dates as above stated.
 CONCLUSION 
For reasons stated the defendant's motion to set aside the verdict and for judgment notwithstanding the verdict are denied; the motion for remittitur is granted, and a remittitur is ordered of $17,748.39.
Teller, J.